## LeMoyne v. Hays.

(Decided November 17, 1911.)

### Appeal from Whitley Circuit Court.

1. Quia Timet.—A suit to quiet title to land may be maintained, under section 11, of the Kentucky Statutes, upon a title acquired by fifteen years adverse possession; but, in order for a trespasser to obtain such a title beyond his actual close, he must have some well-defined or well-marked boundary showing the extent of his claim; and, unless he has such a boundary, his title will be restricted to the land that he has actually inclosed, and which he has had in actual, adverse possession for at least fifteen years.

2. Same—Adverse Possession.—The fact that a grantee erroneously thought that his deed embraced the adjoining land, the title to which is now in controversy, can not, of itself, extend the adverse holding of the grantee beyond the boundaries of his deed.

3. Boundary—Marking of.—Where the claimant by adverse possession owned the land which surrounded the disputed territory; and, in marking his survey of the disputed territory, he followed the lines of the adjoining and surrounding tracts, and the marking of his boundary consisted merely of the re-marking of the lines of the old adjoining surveys, but did not have a well-defined or well-marked boundary that would carry him beyond his inclosure, he will be restricted to his inclosure.

4. Disseizin—What Constitutes.—To constitute a disseizin, the disseizor must not only enter upon the land of the owner, but must dispossess him, and must keep him dispossessed continuously for the statutory period of limitation. To dispossess the rightful owner, the disseizor must so occupy, use and control the premises, that his possession and claim alike are notorious, and make impossible during their existence, a similar occupancy, use and control of the same land by the owner.

GILLIS & GILLIS and CHARLES H. RODES for appellant.

ED. STEPHENS AND J. N. SHARP for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellee, Hays, sued appellant, LeMoyne, to quiet his title to 200 acres of land which lies entirely within the boundary of the O'Bannon, Griffin, Morgan & Co.'s 8,000 acre patent to which appellant, LeMoyne, has a complete and perfect paper title derived from the Commonwealth. Hays does not pretend to have any paper title to the 200 acres in controversy; he relies upon his adverse possession thereof solely. The O'Bannon 8,000

acre survey was patented in 1852. In about 1880 appellee, Hays, bought from Ryan a 50 acre tract of land adjoining this 200 acre tract. He took possession of the 50 acre tract about that time under a title bond from Ryan, and subsequently obtained a deed from him in 1884. At the time Hayes bought the 50 acres from Ryan he says he thought he was getting the entire 200 acres in controversy, and that Ryan told him that his boundary included that tract. In 1884, however, Hays discovered that his deed did not embrace the 200 acres in controversy, and he undertook to get title to it by procuring a warrant and having it surveyed. He never perfected the title in this way, however, since he went no further after procuring the survey. The survey was never carried into a grant, and Hays does not claim any title by reason of it. When Hays took possession of the 50 acres he moved into a house near the dividing line but within the boundary of the 50 acres, and he also took possession of the adjoining 15 or 20 acres of cleared land that were beyond his boundary, and within the adjoining 200 acre tract now in controversy. He has, within the past twelve years, extended this clearing until he now has actual and visible possession of about 60 acres of the 200 acre tract. This is a suit, therefore, by a trespasser who entered upon the land of another, and without even a color of title, in which he is asking that his title be quieted, not only to the 60 acres, which is the extent of his visible adverse possession, but also to the remaining 150 acres to which he asserts a constructive possession.

This action is brought under section 11 of the Kentucky Statutes, and in order to quiet his title thereunder the plaintiff must show both legal title and actual possession. Brown v. Ward, 32 Ky. Law Rep,. 263. A legal title which will thus be protected by a court of equity is not necessarily a title acquired under a deed; a title by continued adverse possession of fifteen years or more may be sufficient to sustain the action.

In Trustees of Louisville v. Gray, 1 Litt., 148, the court said:

"Without the production of written evidence of a regular title from the Commonwealth, it might be proper, under peculiar circumstances, for a court of equity to protect a long continued possession; but to en-

able the court to do so, the possession should appear to have been continued so long, as to form, in itself, convincing evidence of the person possessed having title.''

In the late case of LeMoyne v. Roundtree, 135 Ky., 45, this court said:

''We have never held that a mere trespasser could obtain a possessory title unless he claimed to a well-marked and well-defined boundary. His possession must be such as gives the world, and especially those in interest, notice of the extent of his claim; and then, if the owner stands by and allows the trespasser to occupy and claim his property for the full term of fifteen years, he loses it, and the trespasser under the statute, obtains title to the extent of his possession. The appellee had no such possession as is necessary to the acquisition of title by prescription, and what he did upon appellant's land, according to his own testimony, did not give notice of his adverse holding, except to the few acres he enclosed. A wrongdoer cannot acquire title to another's land by occupancy without giving notice for fifteen years of what he is doing and claiming.''

In Farmer v. Lyons, 87 Ky., 426, we further said:

''It being thus decided, we think correctly, that a possession without title may exist, which, if continued for fifteen years, will bar a recovery in ejectment of any part of the land within a marked boundary, by even one having title derived from the Commonwealth, we see no reason why such a possession should not be held effectual to support an action for trespass committed within the boundary, whether outside or within the enclosure. In our opinion, if appellant had openly held possession of the land in dispute, claiming and using it as his own, to a well defined marked boundary, continuously for fifteen years before the alleged trespass, he was entitled to recover.''

It may be considered as settled, therefore, within this jurisdiction, that a suit to quiet title to land may be maintained upon a title acquired by fifteen years adverse possession. Vallandingham v. Taylor, 23 Ky. L. R. 1059, Goff v. Lowe, 32 Ky. L. R. 1098; Overton v. Perry, 129 Ky. 415; Newsome v. Hamilton, 142 Ky., 5.

But in order for a trespasser to obtain such a title beyond his actual close, he must have some well-defined

or well-marked boundary showing the extent of his claim; and unless he has such a boundary his title will be restricted to the land that he has actually enclosed, and which he has had in actual adverse possession of for at least fifteen years. The fact that Hays erroneously thought that his deed from Ryan embraced the 200 acres in controversy, cannot, of itself, extend his adverse possession beyond the boundaries of his deed.

In Hunter v. Chrisman, 6 B. Mon. 466, this Court said:

"We are satisfied that his erroneous supposition that he was within the boundary, would not suffice to give a constructive extension to his possession beyond his actual close, unless there were some distinct demarcation of the boundary which he supposed to be the patent line, or to which he claimed and intended to be possessed. A man cannot by taking actual possession of one place, extend that possession by a mere indefinite claim, without title or boundary. If Blakeman, when he marked the double elm under the supposition that it was in Early's line, had, notwithstanding his discovery of the mistake, run the lines now claimed by his grantees, and claimed to be possessed to that boundary, it would be going far to say that he thereby acquired possession to that extent."

If there is anything more in appellee's claim of title by adverse possession than his actual possession of the 60 acres, it must be by virtue of the fact that he claims to have had a marked and well-defined boundary around the 200 acres of land in controversy, with inclosures of part of it for fifteen years, while claiming the whole of it. Such claim, however, cannot extend back of the date of the marking of the boundary. Neither the date of the marking, or the sufficiency thereof, is of easy determination under the evidence in this case. The survey under which Hays claims was made by Chambers in 1886, and was subsequently recorded by Hays in the county court clerk's office in 1906, without the formalities required by law. The calls and distances of the survey, as tending to show the extent of the alleged possession, is the only purpose for which the survey can be used.

We are of opinion, however, that this survey, al-

though made, was not followed by such a marking of the boundary as would give evidence of Hays' hostile possession thereunder. This land is surrounded by four other tracts of land which belonged to Hays. In marking his survey of the 200 acre tract in 1886, he admits that he followed the lines of the adjoining four tracts which surrounded the 200 acre tract, and that his marking of the boundary to the 200 acre tract consisted merely of a re-marking of the lines of the old adjoining surveys. While it is true, Hays states, in a general way, that when Chambers made the survey in 1886, the lines were marked from corner to corner so as to make them plain and visible by marking trees and blazing little timber, most of his testimony is given by a simple affirmative answer in response to leading or suggestive questions, and are largely mere conclusions of the witness. When he is asked specifically as to each corner and line, he shows only ten corners standing and marked. There are thirty-two lines called for, and Hays says that four of them are marked, and all of these are on one end of the survey. He not only fails to show that the other lines are marked, but he admits that eleven of the lines are not marked.

In condemning a boundary marked in this way, in Fuller v. Kessee, 31 Ky. L. R. 1100, this Court said:

"They also speak of there being some marked trees along on the ridge, but no one testifies that these trees were marked as the boundary of Davis' claim. On the other hand, the proof is that these trees were marked as the boundaries or lines of other surveys."

There is no evidence that would justify us in saying that Hays entered upon and occupied the land under a belief that his title was good, or that he in good faith believed that he had title to a notoriously defined boundary.

There is evidence to the effect that Hays built a small house, known as the "Lovett House" within the clearing shortly after he moved there about thirty years ago, and that he has continuously kept said house and the adjoining premises in his uninterrupted possession through his tenants; but Hays could not extend his possession beyond the clearing unless the outside boundary was sufficiently well marked and defined to carry his pos-

session to that extent. In other words, Hays' possession, in so far as it extends beyond his close, depends upon his boundary, and the character of its marking. The same may be said as to his own house, even if it were located beyond his line and within the 200 acre boundary; but the evidence shows that Hays' residence is within the boundary of his 50 acre tract which he bought from Ryan.

The principles of law applicable to this case are well stated in Helton v. Strubbe, 22 Ky. L. R. 1920. In that case appellants made small inclosures of portions of Strubbe's land and undertook, by that method, to lay claim to a large undefined boundary of the Strubbe land; that is, undefined so far as any sufficient inclosure was concerned. Subsequently, and about 14 years before that suit was filed, they made additional inclosures. Neither the extent nor the date of those inclosures were shown by the proof, although the appellants might and should have done so, rather than leave the court to hazard a speculation in aid of their claim. In denying the sufficiency of Helton's position, this Court said:

"It is not satisfactorily shown that any of this land outside of the two small patches first mentioned, was ever cultivated, controlled, used or actually occupied by appellants or either of them, save till within the last fifteen years. Upon this state of proof the circuit court adjudged the whole of the land to appellee. We are not satisfied with the character of appellant's alleged holding of any of these lands save the two small tracts first mentioned, the twenty acres of William Helton and three acres of R. P. Solomon. To constitute a disseizin, the disseizor must not only enter upon the land of the owner, but must dispossess him, and must keep him dispossessed continuously for the statutory period of limitation. To dispossess the rightful owner, the disseizor must so occupy, use and control the premises that his possession and claim alike are notorious and make impossible during their existence the similar occupancy, use and control of the same land by the owner."

Speer v. Duff, 23 Ky. Law Rep., 1323; Woodward v. Johnson, 28 Ky. Law Rep., 1096; Interstate Investment Co. v. Bailey, 29 Ky. Law Rep., 470; Ohio & Big Sandy R. R. Co. v. Wooten, 20 Ky. Law Rep., 385; Kountze v.

Hatfield, 30 Ky. Law Rep., 592; and Mann v. Cavanaugh, 110 Ky., 787; are to the same effect.

We are of opinion that the court improperly quieted Hays' title to the entire 200 acre tract, and that he should have limited his relief to the quieting of his title to the original 20 acres of which he took possession at the time he moved upon the Ryan tract in 1880. As to the three small additional tracts which he subsequently cleared and took possession of, Hays shows that his actual, hostile possession thereof had continued only for periods of four, ten and twelve years respectively; and to these he acquired no title. Fuller v. Kessee, 31 Ky. Law Rep., 1100.

The boundary of the original 20 acre clearing should be determined by a survey, and Hays' title thereto quieted; his petition to quiet his title to the remainder of the 200 acre tract should be dismised.

Judgment reversed for further proceedings consistent with this opinion.