## Williams, et al. v. Lowe.

(Decided May 1, 1917.)

### Appeal from Magoffin Circuit Court.

Quieting Title.—A suit to quiet title to land may be maintained under section 11 of the Kentucky Statutes under a title acquired by fifteen years of adverse possession.

JOHN H. GARDNER for appellants.

E. W. PENDLETON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Lowe brought this suit to quiet the title to a tract of land described in his petition, averring that he had been in the possession of the land for more than twenty years and that Williams was asserting title to a small part of it.

Williams, in his answer, denied that Lowe was the owner of that part of the land described in his petition as "Beginning at the mouth of the second right-hand drain on the Laurel Fork; thence up the point just above said second right-hand drain to the top of the ridge; thence with the top of the ridge a northwest course to the ridge that comes down between two drains near together; thence down said forked ridge between the two said drains to the Laurel Fork; thence down said Laurel Fork to the beginning." And averred that "to the extent that the tract of land described in this answer conflicts with that described in the petition, this defendant is the owner and in possession of the same."

He also denied that Lowe had ever been in the pos‑ session of this piece of land, or that he was trespassing on or asserting title to any land owned by Lowe.

A reply completed the pleadings.

After evidence had been taken by deposition, the lower court granted Lowe the relief prayed for, and Williams appeals.

It appears from the evidence that in 1891 Lowe purchased from the Phipps a tract of land described as situated on the Rock House Fork of Licking River, "Beginning at the mouth of Deadening Branch; thence southwest course with the meanders of said branch to the top of the ridge; thence a west course with said ridge to the point between Buck Lick Fork and the Rock House Fork; thence down said point near the fence to the old corner at the creek; thence up the creek to the mouth of the Laurel Fork, and up said branch with its meanders to the second right-hand drain; thence up the point above said drain to the top of the ridge; thence with said ridge with its meanders a northeast course to W. M. A. Montgomery line; thence with said line down the point to the beginning."

It will be noticed that one of the lines in this deed is "up said branch with its meanders to the second right-hand drain; thence up the point above said drain to the top of the ridge." The description of the land claimed by Lowe in his petition does not quite follow the courses of the description of the land in this deed, but in respect to this drain there is no substantial difference between the deed description and the petition description, as the petition describes this particular course as "thence up said branch with its meanders to the fork

point between two drains near together, and thence up the center of the point to the top of the main ridge." And as we gather it from the testimony, the controversy depends on the location of this "drain" mentioned in the deed as well as in the petition.

It would have aided us very much in the solution of this question if a map or diagram of the premises had been put in the record, but as there is none, we must endeavor to find from the evidence the location of the drain described in the deed. It appears from the evidence that Lowe has been in the possession of the land covered by his deed for probably twenty-five years, holding and claiming to the boundary lines of his deed; that about three or four years ago Williams commenced cultivating about a quarter of an acre of the land within the boundary lines of Lowe's deed, if the deed of Lowe covers this little spot in controversy. Whether it covers it or not depends on the location of the right-hand drain mentioned in the deed. The testimony for Lowe is to the effect that the two drains mentioned in his deed are located at a place called Twin Hollows, while Williams insists that one of the drains referred to in the deed is a little drain opposite his house. In other words, the contention of the parties comes down to this: If the little drain opposite Williams' house is not one of the drains mentioned in the deed, then the land in dispute belongs to Lowe; but if this little drain opposite Williams' house is one of the drains in the deed, the land in controversy belongs to Williams. The decided weight of the evidence supports the contention of Lowe, and we think the land in dispute was owned by him.

The argument is made that Lowe could not maintain this action to quiet his title because he was not in possession of the land when the suit was brought. This contention is not well founded, however, because Lowe was in possession of all the land covered by his deed, and if this disputed land was within the boundary lines of Lowe's deed, he was in the possession of it within the meaning of the statute and had the right to maintain an action for the purpose of quieting his title to any part of it against the claim of an intruder, such as Williams, who was asserting a hostile title to any portion of it within the boundary lines of the deed. Williams does not exhibit title of any kind to the land in dispute. His whole contention appears to be that it was not owned

by Lowe and, therefore, Lowe could not maintain an action to quiet the title. Lowe did not trace his title back to the Commonwealth, nor was this necessary, because he relied on his deed and his actual possession under this deed for more than fifteen years. A person who has been in the adverse possession of land for more than fifteen years, holding and claiming it under a legal title, may bring, under section 11 of the Kentucky Statutes, an action to quiet his title, with the same effect as if he could trace his title back to the Commonwealth. Le-Moyne v. Hays, 145 Ky. 415.

It is further insisted that as Williams had been in the actual possession of this little spot of ground for three or four years in the cultivation of crops, Lowe could not maintain an action to quiet his title to it, but must bring a suit in ejectment. In this contention we cannot agree with counsel. We think that if an intruder takes possession of land, claiming the right to do so in opposition to the title of the real owner, the real owner may bring a suit against the intruder to have his title quieted.

The evidence shows in a very satisfactory way that the judgment of the lower court was correct and it is affirmed.