## Wilson v. Pioneer Coal Company.

(Decided May 6, 1921).

## Appeal from Bell Circuit Court.

1.  Quieting Title—Title by Adverse Possession.—Title by adverse possession will support an action to quiet title, and therefore in such case neither a failure to trace a record title back to the Commonwealth nor proof that an old patent covers the land, is fatal to the action.

2.  Deeds—Construction—Boundaries.—Where a reasonable application of the calls in a deed to the objects called for, a ridge and a creek, agrees with the construction placed thereon for many years by the parties, that construction will be upheld.

3.  Dedication—Burying Ground.—A small tract of land owned by the grantor and used as a family burial ground which was not included in a deed was not dedicated by the deed as a graveyard simply because it was referred to therein as such in describing the lines which are common to it and the land conveyed.

4.  Dedication—Highways—Presumptions.—A dedication of a public road will be presumed from a long continued use by the public under a notorious claim of right.

5.  Dedication—Highways—Implied Dedication.—A dedication of a highway may be impliedly accepted by long continued user or by the proper public officials taking charge of and working same as a public road.

6.  Highways—Discontinuance—Burden of Showing.—Once a highway always a highway unless it is abandoned or vacated in due process of law; and the burden of showing a discontinuance, vacation or abandonment is on the party who asserts it.      -

J. G. ROLLINS for appellant.

JAMES H. JEFFRIES for appellee.

Opinion of the Court by Judge Clarke—Reversing.

Alleging that she was the owner and in possession of a described tract of land containing less than half an acre and that the defendant was interfering with her enjoyment and possession of same and had built a fence across the public road thereto, the plaintiff, Annie Wilson, now appellant, instituted this action in equity to quiet her title and also to enjoin the defendant from interfering with her possession of the land and from obstructing the road leading thereto.

The defendant filed an answer and counterclaim of six paragraphs, the first of which is a traverse of the allegations of the petition and contains an admission that the defendant has no title to or interest in the land involved except as stated in succeeding paragraphs. In the second paragraph it is pleaded that the land claimed by plaintiff together with a small adjoining parcel was dedicated more than thirty years before the institution of this suit, by the then owners of same, to the general public living in the neighborhood for burial and graveyard purposes. In the third paragraph it is alleged that when plaintiff procured her deed to the land, same was in the actual adverse possession of the persons buried therein and that her deed was therefore champertous and void. In the fourth paragraph it is alleged that all of the land claimed by plaintiff is covered by a patent for 50,000 acres issued to Abraham Moorehouse in 1799 and that same is elder and superior to plaintiff's title. In the fifth paragraph it is alleged that plaintiff and her brothers by the terms of their deed in conveying a large adjoining tract of land on Kettle Island creek to A. J. Asher in October, 1900, recognized and confirmed the former dedication of the tract and themselves dedicated same to defendant and the public for graveyard purposes. In the sixth paragraph, defendant alleged that plaintiff's claim of title to the small tract and the right to use the road or passway to same over its land is a cloud upon its title to lands adjoining that claimed by plaintiff.

The prayer is that plaintiff's petition be dismissed and that the court adjudge that the tract of land claimed by plaintiff had been dedicated to the public as a graveyard and for burial purposes and that it cannot be used by plaintiff or others for secular or business purposes.

The affirmative allegations of the answer and counterclaim having been traversed by reply, the proof was

heard and transcribed in open court by agreement. This appeal is from the chancellor's judgment dismissing the petition and granting defendant the affirmative relief sought by its counterclaim.

The land claimed by plaintiff lies on the left hand side of the crest and at the end of the ridge which forms the watershed between the left hand and right hand forks of Kettle Island creek and includes a small piece of bottom land, formed about 1876 by a change in the course of the left hand fork of the creek.

The tract which defendant claims has been dedicated to the public as a graveyard and which we shall refer to as the graveyard tract, is the whole of the tract claimed by plaintiff and a small tract adjoining same and lying on the right hand side and at the tip end of the crest of the dividing ridge.

There is practically no conflict in the evidence and the pertinent facts are these: Plaintiff was in the actual possession of the land claimed by her when she instituted this action and her tenant was conducting a store in a building he had constructed on same in competition with defendant's commissary. Defendant owns all of the land on Kettle Island creek and its two forks within a mile of the forks, except this graveyard tract which it had inclosed by a fence but which it admits it did not own or have in possession.

Defendant acquired the land surrounding the graveyard tract in 1911 by one deed from the Edgemont Coal Co., which likewise acquired it by a single deed from A. J. Asher in 1907, but in both of these deeds the lands on the two forks of the creek are described separately just as in separate deeds to Asher from the Wilsons for the land on the one fork and from Abraham Lock on the other. Neither of these deeds to Asher covered any portion of the graveyard tract although each referred to same as "the graveyard" in describing the lines where same adjoined the lands conveyed.

In 1870, which is as far back as the titles are traced, Thomas M. Lock lived upon and claimed to own the lands on the left hand fork of the creek and Abraham Lock lived upon and claimed to own the lands on the right hand fork. Thomas M. Lock conveyed his land in 1875 by deed to Jas. W. Ward, who took possession of, lived upon and claimed to own same, until he sold and conveyed it to J. D. Asher on November 16, 1877. Ward remained

upon the land as Asher's tenant until the latter sold and conveyed same in 1880 to W. F. M. Wilson, who took possession and lived upon the land until his death intestate about 1889. His children, plaintiff and her two brothers, were in possession of the land by tenants until 1900, when they conveyed all of same to A. J. Asher, except the small tract involved here which her brothers later conveyed to plaintiff. Hence plaintiff has proven that she and her brothers and those under whom they claimed were in the actual adverse possession of all of the land covered by their deeds continuously from 1870 until 1900, or for thirty years. Therefore if these deeds cover the tract in controversy, plaintiff and her brothers had a perfect title to same by adverse possession for more than the statutory period, when in 1900 they made the deed to Asher for the other lands admittedly covered by those deeds, unless as claimed by defendant same had been dedicated as a graveyard theretofore or was so dedicated by that deed. Since as this court has frequently held title by adverse possession will support an action to quiet title it is obvious there is no merit in appellee's first two contentions that the dismissal of plaintiff's petition was proper because of her failure to trace her title back to the Commonwealth and because of the fact the land she now claims is covered by the old patent for 50,000 acres issued to Abraham Moorehouse in 1799. LeMoyne v. Hays, 145 Ky. 415, 140 S. W. 552; Williams v. Lowe, 175 Ky. 369, 194 S. W. 342.

The questions upon which her title depends are, as we have seen: (1) Do the deeds to her father and those under whom he claimed, cover the tract here involved? and (2) if so has same been dedicated to the public for burial purposes?

The two lines involved are described in substantially the same way in each of the deeds under which plaintiff claims and also in the deeds prior to 1900 conveying the adjoining lands on the right hand fork of the creek. These two lines which we have italicized and the lines preceding and following them are thus described in the deed to appellant's father:

"Thence with said Rice's line crossing the head of the hollow to the top of the fork ridge which divides the right and left hand fork of Kettle Island branch; *thence with the top of the ridge down to the graveyard; thence*

*with the left hand fork of said branch to its junction;* thence with the main branch to Straight creek.''

The evidence shows conclusively and without contradiction that the ''graveyard'' there referred to is the small portion of the Abraham Lock land adjoining the crest of the ridge on the right hand side thereof, since it was not until long after appellant's father acquired the lands on the left hand side of this ridge that any persons were buried on his side of the ridge, whereas for many years the Locks had permitted any one that desired to do so to bury relatives upon their lands at this place. There were about forty graves on the Lock side and not a single one on the Wilson side when this deed was made in 1880.

Since the upper part of the graveyard is on the crest of the dividing ridge and the next call is ''thence with the left hand fork of said branch to its junction'' it is insisted there is a connecting line omitted that must be supplied. Admitting this to be true it could have been supplied easily by extending the line down the ridge about twenty feet to the creek since it is only that distance between the upper end of the graveyard as it then existed and the old channel of the left hand fork of the creek which was evidently referred to in all these old deeds employing this description. By so doing all of the tract now claimed by plaintiff was covered by the deeds of her father and those under whom he claimed. We do not, however, have to rest the decision of this point alone upon a reasonable application of the calls of the deed to the objects called for, a ridge and a creek, since this was done and any uncertainty in the description in the deed was settled by the interested parties, as is shown by the fact that since from as far back as any of the witnesses can remember until rather recently, there was a fence from above the upper end of the old Lock graveyard running with the crest of the ridge to the end of same and thence down the left hand fork of the creek. This fence was built by Lock and was recognized by him and all parties who ever owned the land on either side of this dividing ridge, as on his side and near the dividing line between their lands.

Not only does all of the evidence show that plaintiff and her brothers had title to this tract of land, when they made deed to A. J. Asher in 1900 for the rest of the land inherited from their father, but the very contention of de-

fendant that by that deed plaintiff and her brothers dedicated this tract to the public as a graveyard is necessarily an admission that they had the necessary title therefor.

Coming now to the question of a dedication there is absolutely no proof whatever to sustain such a contention prior to the time appellant's father acquired the land, since as already pointed out it had never been so used by any one, and the reference to a graveyard· in his and prior deeds was to the Lock graveyard. Nor is the fact that he buried his wife and two children on the hillside at the upper end of this small tract and that plaintiff and her brothers buried him beside his wife when he died and have since permitted one other child to be buried there and that one other person has been buried there without their knowledge or consent, any evidence of a dedication of even that portion of the tract on the hillside adjoining the old Lock graveyard much less the piece of bottom land upon which plaintiff is conducting a store in competition with defendant's commissary and about which the parties are really concerned.

To sustain the contention that by their deed to Asher, plaintiff and her brothers so dedicated this land to use as a graveyard that it cannot now be used by them for secular or business purposes, counsel for defendant rely upon the cases of Johnson, et al. v. Elkhorn Gas Coal Mining Co., 176 Ky. 676, Damron v. Justice, 162 Ky. 101 and Brown v. Anderson, 88 Ky. 578, but there is absolutely no analogy or resemblance between those cases and this one. In those cases the tract of land conveyed *included* a small tract used for burial purposes and which by the deed was reserved to the grantor for burial purposes alone and he did not therefore have any other rights therein and could not use same for secular or business purposes. In the instant case the land involved was not a part of the land conveyed and there is no reservation or stipulation of any kind with reference to it. It was not involved in any way in the transaction between the parties and it was not mentioned in the deed except in describing the lines around it where it adjoins the land conveyed. That deed therefore contains no element of a dedication or parting with title or commitment of any kind by the grantors with reference to this tract of land.

It therefore results the chancellor erred in refusing to quiet plaintiff's title and in granting defendant the affirmative relief asked by way of counterclaim.

This leaves for consideration plaintiff's right to an injunction requiring defendant to remove the obstructions it has placed in the road leading through its lands to plaintiff's land. Plaintiff alleges and defendant denies that this road is a public road.

The proof shows that since 1860 or earlier there has been an open road up Kettle Island creek to its forks and up each fork for some distance; that it follows the creek, is clearly defined and has been used continuously as matter of right by the people who have lived on the creek and its forks and the public generally as the only means of ingress and egress by wagon or vehicle; that for some years there was a grist mill up the left hand fork beyond the Wilson lands and that for some years while this mill was being operated, overseers were appointed by the county court who caused the road up as far as the mill to be worked by the residents of the neighborhood required by law to work the public roads of the county; that Sol Baker was the overseer and worked the road in 1876 and 1877, beginning about 200 yards below the forks and working up the creek past plaintiff's land; that it was then a "public wagon road," to employ the language of one witness; but there is no evidence that it has been worked by county officials as a public road later than some sixteen or seventeen years ago although it has continued to be used as such. The gates were placed across the road by the Edgemont Coal Company in 1907 and defendant locked same against plaintiff's tenant shortly before the suit was filed, and for the purpose, as stated by defendant's manager, of keeping delivery wagons from driving up through its mining camp, which contains more than a hundred miners' houses and a government post office, besides tipples, commissary, etc.

It is therefore shown that the former owners of the lands now owned by both plaintiff and defendant for at least forty years suffered not only those owning or living upon land on the waters of the main creek and up the left hand fork as far as the old grist mill but the public as well to use this roadway knowing it was claimed as a matter of right, from which the law presumes a dedication to the public. But a dedication by the owners to public use is not alone sufficient to make the road a public highway; an acceptance by the public is necessary. Just what would constitute an acceptance by the public was formerly in much doubt in this jurisdiction, but in Riley

v. Buchanan, 116 Ky. 625, 76 S. W. 527, 63 L. R. A. 642, after an exhaustive review of the authorities, the court stated its conclusions as follows:

"We feel constrained by reason and authority to hold that while an acceptance by the public is essential to a complete dedication of a public highway or passway, the acceptance may be either by formal ratification by the proper official board of the municipality; or by implication by it, where it takes charge of the road by directing improvements on behalf of the public, or otherwise by overt act recognizing it as a public road; or it may be by the public by such protracted and continued use as to clearly indicate its acceptance, when the road dedicated is a benefit to the public and not a burden. In the last named state of case, a formal acceptance by the proper legal authority will be conclusively presumed to have taken place. Should the road become a burden to the public, it may be discontinued in the method pointed out by the statutes."

These principles have been adhered to and reaffirmed by this court in many cases, the most recent being Rockcastle County v. Norton, 189 Ky. 690.

It is therefore established that this road was not only dedicated by the owners of the land as a public highway but was accepted as such by the long period of time it was so used by the public and by the proper officials taking charge of same and working it as a part of the public road system of the county. And as stated in 13 R. C. L. 62:

"The rule relative to the discontinuance of highways is 'once a highway, always a highway,' unless it is abandoned or vacated in due course of law; and the burden of showing a discontinuance, vacation or abandonment is on the party who asserts it."

There is no proof of a discontinuance by legal proceedings and the only evidence of abandonment is proof that it has not been worked as a public road by the county officials for sixteen or seventeen years. But this is not sufficient. The mere failure of public officials to perform their duties or exercise their rights with reference to working a public highway however long continued could not possibly work an abandonment so as to defeat the public's right to use the road; and especially is this true where, as here, the public continued to use the road without let or hindrance from any one until defendant's pre-

decessor, the Edgemont Coal Co., without right so far as the record discloses placed gates across it in 1907; and there is no evidence that even since then any one has ever been denied its use until just before this action was filed when defendant locked the gates against plaintiff's tenant. In fact counsel for defendant concedes there is now a public road from the forks down Kettle Island creek to Straight creek and contends only that the portion of same leading up the left hand fork to plaintiff's land has been abandoned, but there is no more or different proof of an abandonment of this portion of the road than of the other; the only difference in the proof being that the one has been more extensively used than the other, which was always the case.

Hence the court also erred in denying plaintiff's prayer for an injunction requiring defendant to remove the gates from the road.

Wherefore the judgment is reversed with directions to dismiss defendant's counterclaim; quiet plaintiff's title to the land described in the petition and enjoin defendant from obstructing the road thereto.