## Osborn v. Osborn, et al.

(Decided July 1, 1924.)

### Appeal from Floyd Circuit Court.

1. Quieting Title—Actual Possession in Plaintiff Unnecessary where Defendant Asked Affirmative Relief.—Where defendant himself asserts title by answer and counterclaim, and asks for affirmative relief, court, notwithstanding plaintiff's failure to show actual possession, will consider entire evidence and pass on question of superiority of title.

2. Pleading—In Suit to Quiet Title, Defendant Not Entitled to Complain of Failure to Allege Extent and Nature of Claim.— Defendant in suit to quiet title cannot complain that plaintiff did not allege extent and nature of defendant's claim, or that same was hostile to plaintiff's title, where defendant's own pleading set forth his claims with great detail.

3. Vendor and Purchaser—Contract to Convey Title May be Rescinded by Parol.—Mere contract to convey title may be rescinded by parol agreement.

4. Vendor and Purchaser—Release of Parties from Mutual Undertakings in Contract of Sale Sufficient Consideration.—Release of parties from mutual undertakings was sufficient consideration for cancellation of contract to sell and purchase. ·

J. B. CLARKE and J. D. SMITH for appellant.

A. J. MAY and J. D. HARKINS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

W. J. Osborn owned two-thirds and his wife one-third of a farm in Floyd county. On May 24, 1903, W.

J. Osborn executed and acknowledged a deed conveying to his wife, C. J. Osborn, an undivided one-third interest in the farm.   After the death of C. J. Osborn in the year 1916, the deed was found by their son, D. P. Osborn, and put to record.   Prior to that time W. J. Osborn and his wife conveyed certain portions of the farm to their children, with the exception of James W. Osborn.   It further appears that on April 15, 1911, W. J. Osborn and wife executed to D. P. Osborn a title-bond, by which they obligated themselves to convey all the timber and two-thirds of the mineral, oil, gas and coal under the farm owned by them, the bond reciting, "The other one-third of mineral, coal and gas on, under and in said land is Mrs. C. J. Osborn's undivided interest in said land." The consideration for the bond was the agreement by D. P. Osborn to pay $600.00 to James W. Osborn, his brother, $300.00 to W. E. Osborn, another brother, $300.00 to C. L. Osborn, another brother, and $200.00 to C. J. Osborn, his mother, the bond providing that the money was not to be paid until D. P. Osborn sold the mineral and collected the money.

On March 10, 1917, Wm. J. Osborn conveyed to Jas. W. Osborn his undivided two-thirds interest in the mineral and all the timber on a part of the farm, reserving the surface.

On June 12, 1917, W. J. Osborn, C. L. Osborn, M. A. Osborn, his wife, and Lucille Osborn, an infant, by Nora E. Osborn Hyden, guardian, in consideration of one dollar and other valuable considerations, conveyed another portion of the farm to James O. Osborn, of McAllister, Oklahoma.

On June 20 James W. Osborn reconveyed to his father, W. J. Osborn, the "privileges, rights, rents and full control" of the land conveyed to him by the deed of June 12, 1917.

This action was brought by James W. Osborn against his father, W. J. Osborn and his brothers, D. P. Osborn and Charlie Osborn, Nora Osborn, now Hyden, widow of W. E. Osborn, deceased, and Lucille Osborn, their infant child, to quiet his title.

In his petition he charged that the deed of May 24, 1903, from W. J. Osborn to C. J. Osborn was never delivered and asked that it be cancelled.   He further asked that the deed from W. J. Osborn and wife to D. P. Osborn be reformed.   D. P. Osborn filed answer, counterclaim and cross-petition claiming that he was the equi-

table owner of all the coal, timber and mineral rights in the farm owned by W. J. Osborn and his wife, by virtue of the title bond of April 15, 1911.

On final hearing the chancellor adjudged that the deed of May 4, 1903, from W. J. Osborn to his wife, C. J. Osborn, was not effective, as it had never been delivered, and ordered that it be cancelled, and further adjudged that the title bond executed to D. P. Osborn by his father and mother on April 15, 1911, had been surrendered, and that D. P. Osborn was not entitled to any rights thereunder. He also entered judgment quieting the title of James W. Osborn and fixing the rights of some of the parties in certain respects not material. From that judgment D. P. Osborn has appealed.

It is first insisted that James W. Osborn was not entitled to the relief granted because he failed to prove actual possession of the property in controversy. Ordinarily actual possession is necessary to the maintenance of an action to quiet title, but where, as here, the defendant himself asserts title by answer and counterclaim and asks for affirmative relief, the court, notwithstanding plaintiff's failure to show actual possession, will consider the entire evidence and pass on the question of superiority of title. Clark's Heirs v. Boyd, et al., 152 Ky. 234, 153 S. W. 227. Nor is appellant in a position to complain of the fact that plaintiff did not allege the extent and nature of appellant's claim or that same was hostile to plaintiff's title, since any omission in these respects was fully supplied by appellant's own pleading, which set forth his claims with great detail.

Another insistence is that the court erred in holding that the title bond which W. J. Osborn and wife executed to appellant on April 15th, 1911, was invalid. It is true that the delivery to the grantor of an unrecorded deed ordinarily will not have the effect of reinvesting the grantor with title, but that is not this case. Here there was a mere contract to convey title, and no title had vested in the obligee. The contract could be rescinded by parol agreement, Grafton Bank v. Woodward, 5 N. H. 99, 20 Am. Dec. 566, and a release of the parties from their mutual undertakings was a sufficient consideration. Blood v. Enos. 12 Vermont 625, 36 Am. Dec. 363; Collyer v. Moulton, 9 R. I. 90, 98 Am. Dec. 370; 6 R. C. L. 922, 923. Therefore, it cannot be doubted that the contract was rescinded if it was surrendered to the obligors with the understanding that it should have that effect.

Though the evidence as to what occurred at the time of the re-delivery of the title bond is conflicting, yet, in view of the subsequent conduct of the parties, and particularly the failure of appellant to take any steps to enforce or carry out the contract, we are constrained to the view that the court did not err in holding that the bond was redelivered to the obligors with the mutual understanding that it should no longer be in force, and that the contract was thereby rescinded.

An attack is also made on the conveyances to James W. Osborn. If appellant's title bond had been sustained, it would have been necessary to consider the questions raised, but as the title bond was held invalid, appellant's rights were in no way affected by the conveyances in question, and he is not in a position to complain.

Judgment affirmed.