## Combs et al. v. Combs.

(Decided February 17, 1931.)

BAILEY P. WOOTTON for appellants.

S. M. WARD and H. H. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Alleging that he was the owner and in possession of a certain described tract of land on Troublesome creek in Knott county, Jerry Combs brought this suit against A. J. Combs and Kin Gibson to quiet his title. The defendants filed an answer and counterclaim denying the allegations of the petition, and asserting title to a portion of the land, and asked that their title be quieted. On final hearing, the judgment was rendered in favor of plaintiff, except as to a small portion of the land of which the defendants had adverse possession, and the defendants appeal.

The land in controversy is on the head of Shop Hollow of the Clear Fork of Troublesome creek. Appellee claims title under a 500-acre survey issued to John L. Combs on July 14, 1848. After obtaining a title bond from Shade Combs, Shade Combs died. In an action on the title bond against his heirs, a deed was executed to appellee by the commissioner in 1898. Though no deed was shown from John L. Combs to Shade Combs, the evidence disclosed that appellee for more than 30 years had been living within the boundary, which was well marked and defined, and had been claiming to the full extent thereof.

Appellant claims under a 400-acre survey made in the name of Alex Walker on August 14, 1849, and a 150-acre survey also in the name of Alex Walker made on January 14, 1851, and that he and those through whom he claimed had been in the actual adverse possession of the land for more than 30 years. The further defense was made that an agreed line along the ridge between Troublesome Creek and Shop Hollow was established by Shade Combs, appellee's grantor, and Sam Combs, appellant's grantor, and that this line had been lived up to and acquiesced in for over 30 years.

The first point made is that, in order for appellee to maintain the action, it was necessary for him to show both title and possession, and that he failed in this respect, in that no deed from John L. Combs, the patentee, to Shade Combs was shown. Not only is it the rule that title by adverse possession is sufficient to sustain an action to quiet title, LeMoyne v. Hays, 145 Ky. 415, 140 S. W. 552, but it is also the rule that where, as here, the defendant himself asserts title by answer and counter-

claim, and asks for affirmative relief, the court will consider the entire evidence and pass on the question of superiority of title. Osborn v. Osborn, 204 Ky. 144, 263 S. W. 738.

The further point is made that the court erred in not giving effect to the agreed line established by the grantors of the present claimants. There appears in the record a writing dated September 15, 1876, by which Shadrick Combs and Samuel Combs agreed that the top of the ridge should be the conditional line between them. Though signed by three witnesses, the agreement was not signed by Shade Combs or Samuel Combs. Not only does the fact that the writing was not signed by the parties indicate that they had failed to agree, but there is additional evidence that the agreement was never made and carried into effect by the parties. In the circumstances, the chancellor did not err in holding that the agreed line had never been established and acquiesced in by the parties or their successors in title.

But appellant contends that the John L. Combs survey does not cover the land in controversy. On this question, John T. Fitzpatrick, a surveyor of 20 years' experience, testified as follows: He located the beginning corner of the John L. Combs survey at the beech on the opposite side of the creek 170 feet from the mouth of Drift branch. The beech was 36 or 40 inches in diameter, and had very old marks on it. There were no other beeches there. There was no discrepancy between the calls of the certificate of survey and the patent. The survey did not close according to the calls of the patent and certificate. It lacked about 70 poles. To make the survey close, he reversed the ninth line, ran out the eighth line and intersected it. The beech was also shown by another witness to be the beginning corner. On the other hand, Benton Stamper, a surveyor of Knott county, testified that he had done surveying on the tract of land recently. The only actual surveying he did on the 500-acre tract was the running of the closing line reversed to the end of the ninth corner. That survey calls for beginning at the mouth of Drift Branch on the beech. In making his map, he platted according to the plat. As he located the 500-acre survey, it did not cover the land in controversy. He did not find the beech at the beginning corner, but was told by A. J. Combs and his son that the beech was formerly there. The persons who told him did not tell him where the beech actually stood, but said there was

a marked beech there. He found the marked beech on the other side just across the creek that was about 180 feet away. It was marked for a corner tree, and the mark seemed to be old. He reached his conclusion that the survey did not cover the land in controversy by scaling the plat. He tried platting according to the calls of the patent, and it lacked some 300 or 400 feet of closing. To scale the figure of the plat, the first line from the beginning was lengthened.

In taking the position that the land in controversy was not covered by the John L. Combs survey, not only did Mr. Stamper not begin at the beech, which is clearly shown to be the beginning corner, but claims to have scaled the figure of the plat and have lengthened the first line from the beginning. The choice is between this method and the method adopted by appellee's surveyor, which was to commence at the beginning corner, follow the calls of the patent, and lengthen the last line so as to make it close. The calls of the patent and of the certificate of survey coincide. The only discrepancy is the slight difference shown by the surveyor's plat. There are instances where the plat may be resorted to to correct an error in the patent calls, but, before this can be done, it must first appear that the mistake is in the patent as issued. If nothing else appears in a "call patent"— that is, one whose corners are all stakes, or all but one, or whose lines were not run out and marked at the time —except a discrepancy between the figure made by platting the patent calls, and the surveyor's plat, it is not proof of mistake in the patent. It is just as apt to be a mistake in the surveyor's plat. There being no difference between the calls in the patent and the calls in the surveyor's certificate, the surveyor's plat is of equal dignity with his other certified work but not superior. In such case, the correct method of locating the patent is to commence at the beginning corner, where, as here, it is clearly established, follow the calls, courses, and distances of the patent, and close the last line so as to make a complete boundary. Hall v. Pratt, 142 Ky. 561, 134 S. W. 900; Kentucky Union Co. v. Shepherd, 192 Ky. 447, 234 S. W. 10. Since, as thus located, the survey covers the land in controversy, and appellee proved that he had been living within this boundary, claiming to the full extent thereof for a period of more than 30 years, it follows that the judgment quieting his title was proper.

Judgment affirmed.