## Varney and Wife v. Orinoco Mining Company.

(Decided December 21, 1923.)

### Appeal from Pike Circuit Court.

1. Boundaries—Law Presumes Straight Line Intended by Calls for Line from One Monument to Another.—In the absence of some controlling indication to the contrary, when a description of the boundaries of land calls for a line from one monument to another, the law presumes that a straight line is intended.

2. Boundaries—"Up Said Ridge," Held Not to Indicate Line Followed Crest.—A description of boundaries naming two monuments and using words "up said ridge," held not to indicate that the line between the monuments should follow the crest in the form of a bow instead of a straight line.

3. Adverse Possession—Actual Possession Beyond Boundaries Necessary, Occasional Cutting of Timber Insufficient.—One may not acquire title by adverse possession, except to the extent of his boundaries, although he may claim beyond them and at the time be under the mistaken impression as to the true location of his lines, unless he takes actual possession beyond his boundaries and within those of the disputed tract, and occasional cuttings of timber is not sufficient possession.

4. Evidence—Declaration After Parting With Title Does Not Show Character of Holding.—A statement made by a landowner after he has parted with his title and removed off the premises in regard to boundaries can not be taken as a declaration as to his character of holding, even if otherwise competent.

5. Boundaries—Taking Possession Necessary for Establishment of Conditional Line.—Taking of actual possession up to agreed line is necessary for the establishment of a conditional line.

6. Quieting Title—Plaintiff Must Establish Title.—In a suit to quiet title to disputed strip, plaintiff must establish his title to same as in an ejectment action, in which his success depends upon the strength of his title and not the weakness of that of his adversary.

7. Quieting Title—Plaintiff Not Proving Title Can Not Complain of Judgment for Defendant.—Plaintiffs, in suit to quiet title to dis-

puted strip, not having established title in themselves, cannot complain of judgment adjudging defendant to be the owner.

J. C. CANTRELL and G. R. BLACKBURN, JR., for appellants.

HARMON, FRANCIS & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The subject matter of this litigation is a small tract of land containing about 22 acres located in Pike county. The shape of the tract corresponds in a large measure to that of a stringed bow, familiar to every country boy and which he uses to throw his arrows. A ridge corresponding to the bow in the illustration separates the waters of Sand Lick branch from those of Mud Lick branch just before they each empty into Pond creek. On February 9, 1849, Thomas Hunt obtained a survey of 150 acres of land lying south of the ridge on the Mud Lick side, and on July 8, 1850, he obtained a patent therefor. On August 29, 1859, William McCoy obtained a survey for a like sized patent on the Sand Lick side of the ridge which he carried into patent on the 11th day of June, 1860. Appellants, Varney and wife, are the remote vendees of a portion of the Thomas Hunt patent, while the appellee, Orinoco Mining Company, is a like vendee of the land in controversy and claimed by it to be included in the McCoy patent. Claiming to be the owners of the controverted land, as being a part of the Hunt patent, appellants as plaintiffs below brought this equity action against appellee and defendant below to quiet their title, alleging that they owned it and were in possession of it and that defendant was asserting title to it and committing trespasses thereon  Plaintiff also claimed title by adverse possession. The answer denied plaintiffs' title or possession, and denied that the land was not included in the description of the Hunt patent but was included in that of the McCoy patent.

The cause, after preparation, was submitted and the court dismissed plaintiffs' petition and adjudged defendant to be the owner of the disputed land, and complaining of that judgment plaintiffs prosecute this appeal. The questions presented are: (1), whether the land was covered by the Hunt patent, and if not (2), whether plaintiffs proved title by adverse possession.

In determining question (1), it will be necessary to refer to the material portions of the description in the two patents. The third boundary in the Hunt patent begins at two white oaks on top of a ridge, and the description continues, "S. 71° east 47 poles to a chestnut oak on a ledge of rocks on top of the ridge on the left hand side of said Mud Lick branch; thence running up said ridge S. 52° east 157 poles to 3 chestnut oaks on a bench." The *location* of the last line saying, "thence running up said. ridge S. 52° E. 157 poles to 3 chestnut oaks on a bench," is the point in dispute. The chestnut oak at the end of the third line of the Hunt boundary is referred to in the McCoy patent as "3 chestnut oaks on a ledge of rocks," and the next line and call in that patent says, "S. 52 E. 157 poles to 3 chestnut oaks on a bench." It will thus be seen that the disputed line is expressed in exactly the same words and figures in both patents, and if it should be run straight from its beginning at the "chestnut oak on a ledge of rocks on top of the ridge" (as stated in the Hunt patent), or "3 chestnut oaks on a ledge of rocks" (as stated in the McCoy patent), to the "3 chestnut oaks on a bench" (as stated in both patents), the land in controversy would be included in the McCoy patent and not in the Hunt patent.

The law seems to be quite well settled that "In the absence of some controlling indication to the contrary, when a description of the boundaries of land calls for a line from one monument to another, the law presumes that a straight line is intended." 4 R. C. L. 112; 9 C. J. 167; Carter v. Elk Coal Co., 173 Ky. 378, and numerous other Kentucky cases referred to in that opinion. It is the contention of plaintiffs that the call or line in dispute should be construed so as to run around the top of the ridge, forming the bow in our illustration, instead of straight from the chestnut oak or oaks on top of the ridge to the three on the bench, which would form the string to the bow in the illustration, and in support of that contention it is urged that the words "up said ridge," in the descriptive part of the disputed line in the Hunt patent, is a "controlling indication" that it was intended to run the line around the crest of the ridge instead of straight. It will be observed, however, that in the Carter case, *supra,* almost the exact language was before us for interpretation, except that the words "down the spur" appeared in the indicated straight line instead of "up said

ridge," as we have here. It, furthermore, appears from that opinion that the line in dispute ran from one natural object in a designated course and named distance to another one, the same as we have here; and we held in that case that the words "down the spur" did not mean down the *crest* of the spur, or down the *top* of the spur and with its meanders, in the absence of something in the patent indicating such an intention. The opinion reviewed many prior ones in which such a construction was given, but in each of them there was something contained in the description authorizing that interpretation. A careful reading of that opinion will demonstrate that its facts were almost, if not entirely, on all fours with those appearing in this record, and the principles therein announced must control this case, unless we should find reasons for departing therefrom, which we do not do. We are convinced that a reference to the exhaustive discussion of the question in that opinion dispenses with the necessity of repeating it here, and for that reason we will refrain from doing so.

But it is insisted that Stephen Trout, the immediate vendee of the patentee Hunt, as well as plaintiffs, his vendees, have adversely held the possession of the land in controvery so as to ripen title in them; but we do not so interpret the testimony. It is true that many witnesses testified that Trout claimed to the crest of the ridge, as did also plaintiffs since their purchase from him, but neither took actual possession of any part of the controverted land. The only acts of ownership of it by them were occasional cuttings of timber therefrom. They made no settlement upon it either by clearing land or construction of houses, and it is too well settled to require citation of authorities that one may not acquire title by adverse possession except to the extent of his boundaries, although he may claim beyond them and at the time be under the mistaken impression as to the true location of his lines, unless he takes actual possession beyond his boundaries and within those of the disputed tract.

It is again insisted that the respective holders of both the Hunt and McCoy titles regarded the *crest* of the ridge as the dividing line between the two patents, but the testimony concerning that is vague and consisted mainly in what the witnesses said was their *understanding,* as well as that of others. It is true that a witness testified that

Thomas Runyon, the vendor of defendant's immediate vendor, stated that if he owned any land on the Mud Lick side of the branch he did not know it, but that statement was made after he had parted with his title and had moved off the premises, and can in no sense be taken as a declaration as to his character of holding even if it was otherwise competent. At one time the contiguous owners disputed as to the dividing line, but that was after all the land covered by the McCoy patent, except that in controversy, had been parted with by one of the disputants and there was nothing further said or done concerning it. There was no agreement made between any of the owners at any time as to the location of the line because of controversies concerning it, nor was there ever any taking of actual possession by either side up to any agreed line, which, under numerous opinions of this court, is necessary for the establishment of a conditional line. Neither does the opinion in the recent case of Runyon v. Pond Creek Coal Co., 197 Ky. 757, conflict with the views above expressed. The disputed call involved in that case was "running with her lines to the top of the ridge down the same side to the upper end of the long field." There was no *course* or *distance* contained in that call, as was also true in the case of Webb v. Bedford, 2 Bibb 354, and the difference between such a description and one containing courses and distances is pointed out in the Carter case, *supra*. We, therefore, held in the Runyon case that the facts, as stated in the opinion, created a "controlling indication to the contrary," and that the line should run around the crest of the ridge instead of straight as contended by Runyon, the appellant. The difference in the facts of the two classes of cases is material as the opinions clearly indicate.

In this character of case plaintiff, before he can succeed, must establish his title the same as in an ejectment action in which his success depends upon the strength of his title and not the weakness of that of his adversary. Slone v. Hall, 145 Ky. 232; LeMoyne v. Hays, idem 415; Musick v. Horn, idem 639; Engle v. Bon-Foley Lbr. Co., 173 Ky. 35; Bryant v. Hamblin, 183 Ky. 716, and Cooper v. Williamson, 191 Ky. 213. That being true, plaintiffs are in no condition to complain of that part of the judgment adjudging defendant to be the owner of the land, since their rights are not affected by its propriety or im-

propriety. However, we do not intend to intimate by that language that defendant failed to establish its title to the land in controversy.

It results, therefore, that the court properly dismissed the petition, and the judgment is affirmed.