# Whitaker v. Shepherd.

Dec. 5, 1939.

H. H. Ramey, E. B. Arnett and A. H. Allen for appellant.

W. R. Prater and M. F. Patrick for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant and appellee own adjoining tracts of land located on Licking River, Magoffin County, Kentucky, which they have owned and occupied for many years under their respective chains of title and each of which constitutes portions of a rather large body of land owned originally by Bryson Shepherd.

Perhaps it might be well to here state, for a clearer understanding of this situation, that the appellee, John B. Shepherd, and Cynthia Whitaker, the wife of Benton or T. B. Whitaker, and mother of the appellant, were children of Bryson Shepherd, the owner of the entire tract containing the trifling strip here in controversy, which consists of about 1/20 of an acre of poor gravel land lying on the side of the river bank. John Shepherd's land adjoins it.

John Shepherd, now about 80 years of age, states that having, within the last seven or eight years, heard that his nephew, Bill Whitaker, was making claim to this small strip of land and was attempting to bolster up and assert such claim by enclosing a portion of it with a "short-lived" fence and sporadically cultivating it for the last three or four years, he brought this suit, quia timet, under the provisions of Section 11, Kentucky Statutes, alleging by his petition that he is now and was at the times mentioned the owner and in possession of this certain tract or strip of land in controversy, which was embraced within the boundary lines of a larger tract of land conveyed him in 1886 by his father, Bryson Shepherd, by deed which was duly put to record.

The boundary calls of this deed, having relation to and embracing the disputed strip of land, are as follows:

"Beginning on a white oak tree running with the conditional line between said farm and Bryson Shepherd's farm; thence up the point to the top running the ridge between Will's Branch and Grassy Creek; thence around the head of Will's Branch and Rock House Branch to the conditional line between Vinson Hale and said farm to a marked beech tree, up the point to the top around the ridge to a knob at the end of Bryson Shepherd's field; thence straight down the point to the beginning."

The petition further alleged that the defendant, Bill Whitaker, "is now and has for some time past, been wrongfully, illegally and without right, setting up a claim of some kind and nature to a part of said land and giving it out in words and speeches that he is the owner of a portion thereof, and that he is thereby casting a cloud upon plaintiff's title, unjustly and unlawfully," and concludes with the prayer that plaintiff be adjudged the owner of all the land, including this strip in dispute, within the boundary described and that the defendant, Bill Whitaker, be perpetually enjoined and restrained from entering upon, interfering with or molesting him in the use, occupancy and enjoyment of his property and that he be quieted in his title thereto.

The appellant, defendant below, answered the petition, denying Shepherd's allegation of ownership of the strip of land in question or its inclusion within the boundary of land set out in his petition as having been

conveyed him by his parents, Bryson Shepherd and wife, in 1886, by deed duly recorded.

For further answer and counterclaim to the petition, he alleged his ownership of an adjoining tract of some 75 acres of the dower land of Betty Shepherd, allotted her from the land of Bryson Shepherd, his and plaintiff's common source of title, in 1897 and which tract he alleged was conveyed him by his parents, Benton and Cynthia Whitaker, by their deed of April 5, 1913, and that he had then taken over the possession and occupancy of all the land embraced within the calls of the deed, which he in turn alleges embraces and includes the strip of land here in controversy. Further the answer alleged that he had been in the actual, notorious, continuous and adverse possession of the land in question for more than fifteen years before the commencement of plaintiff's action and pleaded the fifteen year statute of limitations in bar to plaintiff's alleged right of ownership of said disputed strip. The answer concludes with the prayer that plaintiff's action be dismissed and that he be permanently enjoined from molesting the defendant in the peaceful enjoyment of his said boundary of land, embracing this strip in dispute.

It is thus obvious that the issues thus joined on the pleadings between the parties are (1) as to which of these two boundaries embraces this disputed 1/20 of an acre of land and (2) if same is shown by the evidence to lie within the boundary of plaintiff (here appellee), whether or not it has been lost to him by the defendant's having actually occupied it adversely, continuously and notoriously for a period of fifteen years next before the commencement of this action.

The boundary line in dispute, upon which turns the location of this strip of land (that is, whether it is a part of and included within the boundary calls of plaintiff's deed or that of defendant), appears to be that described by the last two calls of defendant's deed, reading "thence down the point with said line *to the river; thence down the river to the beginning,* containing 75 acres more or less." (Italics ours.)

It is appellee's contention, and so testified, that these calls of the defendant's deed were in error and caused him to think that his tract included and embraced the disputed strip of land, in that the call of defendant's deed, reading "thence down the point to the river,"

should have read "across the river with plaintiff's line to a white oak, the beginning point."

As to this, it is to be noted that if the strip of land in controversy was included in the calls of plaintiff's deed, it would, due to its having been granted him by Bryson Shepherd, his father, in 1886, continue to be and remain his under his deed, even though it were mistakenly included and embraced within the calls of the commissioner's deed conveying in 1897 this 75 acre tract to Bryson Shepherd's widow as her dower interest in her husband's land. Such later conveyance of the strip in controversy, derived from Bryson Shepherd, its common source, could not prevail over the latter's earlier conveyance of it (in 1886) to his son, John Shepherd, the appellee.

However, it is to be noted that while appellant, in his answer, avers that the strip of land in dispute is included within the boundary calls of the deed made him by his parents, Benton and Cynthia Whitaker, in 1913 to the 75 acre tract which they had acquired as a part of the Bryson Shepherd land in 1897, he manifestly realizes that his later deed would be ineffective to convey the disputed strip as against the earlier deed of Bryson Shepherd to his son, in that he also bases his claim to this strip upon his actual and continuous adverse possession of it for the statutory period.

The defendant's plea of adverse possession merely joined issue upon the allegation of plaintiff's petition, that continuously throughout the period of some fifty years, or since the land in question was conveyed him by his father in 1886, he had occupied the same under his deed, claiming title and right of possession thereunder to the entire tract and to its exterior boundary calls and that, throughout such period following its conveyance to him, he had occupied, used and supervised the whole of the tract, continuously claiming title and right of possession thereto.

The evidence of the parties given on this question was, as might be in such case expected, highly conflicting, that of the plaintiff and his witnesses being to the effect that his right to possession of this entire tract, including the disputed strip of land, had never been questioned or challenged by the defendant until within the last seven or eight years before this action was brought, when he had heard from others that defendant

was making claim to the strip of land in question adverse to his ownership. Further, plaintiff testified that some seven or eight years before the commencement of his action, he had learned the defendant was hauling rock and throwing it upon the disputed strip of land and that he at once protested against the defendant's doing so upon the ground that it was damaging him as the owner of the land and that the defendant, recognizing his protest made upon such ground as rightful, agreed not to dump any more rock on it. He also testified that within the last two or three years before the bringing of this action, the defendant had either himself or by his tenants cultivated the strip, raising thereon corn and potatoes, but that defendant's action in making such wrongful use of his land was not known of by him at the time, by reason of his having then become practically an invalid. He further testified that some years prior to the bringing of his suit, the defendant had, he was advised, fenced a side of the strip, only partially enclosing it, but that same was not maintained for more than a couple of years.

On the other hand, the evidence for the defendant is that he had, throughout the statutory period and longer, adversely claimed title to and right to possession of this land in dispute and had exercised continually dominion and right of control thereover, through its actual occupation by himself and his tenants.

Upon submission of the case to the chancellor for judgment, he decreed the plaintiff to be the owner of all the land bounded and described in his petition, including the small strip of land in dispute, and perpetually enjoined the defendant from molesting him in the use and occupancy of said property.

Defendant, criticising the propriety of this ruling, has appealed, assigning as grounds for its reversal (1) that the burden was upon the plaintiff in this action "to make a case by the preponderance of the evidence," in which he failed; and (2) that the plaintiff, in an action to quiet title, must establish title in himself, either by deed or possession, and that plaintiff here failed to prove title either by deed or possession, while he, the appellant, has proved title by both, even though he was not required to introduce evidence, but might have stood upon the failure of plaintiff to prove his case.

Section 11, Kentucky Statutes, authorizes "any per-

son, having both the legal title and possession of lands, to institute and prosecute suit, by petition in equity'' to quiet his title thereto and if the plaintiff establishes his title to the land, the defendant shall be decreed to release his claim.

In the case of LeMoyne v. Hays, 145 Ky. 415, 140 S. W. 552, this statutory provision was construed as authorizing the maintenance of a suit to quiet title upon a title acquired by fifteen years of adverse possession; but that, in order for a trespasser to obtain such title beyond his actual close, he must have some well-defined or well-marked boundary showing the extent of his claim; otherwise his title will be restricted to the land he has actually enclosed and which he has had in actual adverse possession for at least fifteen years.

Further in the LeMoyne case it was held that to constitute a disseizin, the disseizor must not only enter upon the land of the owner, but must dispossess him, and must keep him dispossessed continuously for the statutory period of limitation and must himself so occupy, use and control the premises that his possession and claim alike are notorious, and make impossible during their existence a similar occupancy, use and control of the same land by the owner.

Clearly it follows, from the holding in the cited case, that if a suit to quiet title to land may be maintained upon a title acquired by fifteen years of adverse possession (see also Vallandingham v. Taylor, 64 S. W. 725, 23 Ky. Law Rep. 1059; Goff v. Lowe, 107 S. W. 794, 32 Ky. Law Rep. 1098; Overton v. Perry, 129 Ky. 415, 111 S. W. 369; Newsome v. Hamilton, 142 Ky. 5, 133 S. W. 952), the defendant may by answer and counterclaim, setting up title acquired by such required adverse holding of the land of the owner, also maintain a defense to the quia timet action brought against him.

To such effect did the court so declare in Farmer v. Lyons, 87 Ky. 421, 426, 9 S. W. 248, 250, 10 Ky. Law Rep. 375, saying:

> ''It being thus decided—we think, correctly—that a possession without title may exist, which, if continued 15 years, will bar a recovery in ejectment of any part of the land within a marked boundary by even one having title derived from the commonwealth, we see no reason why such a possession

should not be held effectual to support an action for trespass committed within the boundary, whether outside or within the inclosure. In our opinion, if appellant had openly held possession of the land in dispute, claiming and using it as his own, to a well-defined marked boundary, continuously for 15 years before the alleged trespass, he was entitled to recover.''

While, as authorized by Section 11, Kentucky Statutes, a suit may be maintained to quiet title to a disputed strip, the plaintiff must establish his title to same as in an ejectment action and his success depends upon the strength of his title and not the weakness of that of his adversary. Varney v. Orinoco Mining Co., 201 Ky. 571, 257 S. W. 1016; LeMoyne case, supra.

It is further the rule that where the defendant himself, in such action, asserts title by answer and counterclaim and asks for affirmative relief, the court, notwithstanding plaintiff's failure to show actual possession, will consider the entire evidence and pass on the question of superiority of title. Osborn v. Osborn et al., 204 Ky. 144, 263 S. W. 738; Clark's Heirs v. Boyd, 152 Ky. 234, 153 S. W. 227.

Such being the case, it follows that, even had the appellee failed by his proof to show the required continuous possession as the holder of record title to the land in dispute, the defendant having himself asserted title by answer and counterclaim and asked for affirmative relief, the court, in accord with such rule, properly considered the entire evidence and passed on the superiority of title of the parties, however acquired, whether by deed or adverse possession.

The chancellor found, after considering both the petition and the answer and counterclaim of defendant, that the title of plaintiff to the land in question was superior and that same be quieted.

The record shows that a map was introduced in evidence, tending to visually show the location of the strip of land in dispute. For some cause, not stated, this map has been left out of the record here before us, which would likely have assisted us in our interpretation of the testimony given with reference to the lines and location of the tract, as thereon designated, had it been included. The chancellor, however, had the benefit of

its showing in his finding as to the location of the strip in controversy.

As usual in cases of this kind, the evidence is highly conflicting and that of each of the parties appears ample and sufficient to support a judgment given in favor of either.

The questions here in issue, it appears, are purely questions of fact, as to which numerous witnesses testified, giving their conflicting reports as to both the location of this land and its use and occupancy. This evidence was all heard and considered by the chancellor, who knew the witnesses and had the help of the map in interpreting their testimony.

We conceive it would serve no profitable end to here enter upon a detailed discussion of this evidence, deeming it enough to say that it was such, both in its substantial quality and quantity, as to uphold the judgment of the chancellor.

The rule in such case is that where, upon a consideration of the whole record, the mind is left in doubt and we can not say with any reasonable degree of certainty that the chancellor erred, we will not disturb his finding. Wathen v. Wathen, 149 Ky. 504, 149 S. W. 902; Harris v. McReynolds, 155 Ky. 450, 159 S. W. 954; Scott v. Chandler, 161 Ky. 536, 170 S. W. 1195; Smith v. Rader, 157 Ky. 178, 179, 162 S. W. 799.

Judgment affirmed.