## Combs et al. v. Combs.

Oct. 31, 1941.

Bailey P. Wootton for appellants.

T. E. Moore, Jr., for appellee.

Opinion of the Court by Judge Tilford—Affirming.

The appellee instituted this action to quiet his title to approximately one hundred acres of land on the south side of the north fork of the Kentucky river in Perry County, and to recover the value of timber cut and removed therefrom. The appellants denied appellee's title and asserted title in the appellant, Jennie Combs, which they asked the Court to quiet. After several submissions and the rendition of a judgment dismissing the petition and counter claim, which judgment was set aside in order to permit the taking of additional proof, the Chancellor adjudged appellee to be the owner of the land in controversy, with the exception of a small cleared field which he awarded to the appellant, Jennie Combs. No cross appeal has been sought, and hence the only question we are called upon to determine is whether the Chancellor correctly held appellee to be the owner of the boundary, exclusive of the small field referred to.

The contentions of the respective parties and the deficiencies in the proof which caused the Chancellor to enter the original judgment dismissing both the petition and the counterclaim were set forth by him in a written opinion from which we quote:

"The tract of land is included in the boundary of a certain deed made from R. C. Combs to Lacy Combs in 1888. Lacy Combs died intestate, and his widow and his other children (Henry Combs being one of his children) conveyed the land to the plaintiff. The evidence shows that Lacy Combs and his children have lived on the inside of the boundary deed from R. C. Combs since the date of that deed but none of them has lived on the tract in controversy. No one has ever lived on the particular tract in controversy. The defendant, Jennie Combs, claims under a deed from her father, Mat Crawford, made after the date of the deed from R. C. Combs to Lacy Combs but more than fifteen years before the institution of the action. The defendant has a counterclaim and asks to be adjudged the owner of the land.

"As to the record title of the plaintiff, the Court finds that the land or a portion of it, is cov-

ered by the 322 acre patent issued to Nicholas Combs and filed in evidence, but the deeds filed by plaintiff in evidence are so indefinite in their description that the Court is unable to say that any of them, except the deed from R. C. Combs to Lacy Combs and the heirs of Lacy Combs to Henry Combs, cover the land in controversy. So that, the plaintiff has failed to show a connected paper title back to the Commonwealth. The defendants did not see fit to introduce any record title except the deed from Mat Crawford to Jennie Combs. The evidence shows that Mat Crawford lived inside the boundary which he conveyed to Jennie Combs. There is no evidence, however, as to the extent of his claim. The evidence offered by plaintiff on the question of possession under the boundary deed from R. C. Combs to Lacy Combs is not sufficient to show such a continuous, adverse possession as would ripen into title. On the other hand, the evidence, offered by the defendants on the question of possession under the deed from Mat Crawford to Jennie Combs is not sufficient to show such a possession as would ripen into title, because this same land was included in the boundary deed from R. C. Combs to Lacy Combs and it seems that for years there has been a claim of ownership by both those claiming under R. C. Combs and those claiming under Mat Crawford adverse to each other.''

After the judgment referred to had been set aside, the appellant introduced in evidence a deed from Nicholas Combs, Sr., to James M. (Mat) Crawford, dated August 12, 1867, conveying to the latter a three hundred and eighty-six acre tract which appellants claim comprises the land in controversy, but no attempt was made to prove the grantor's source of title. The appellee introduced two surveyors, one of whom had previously testified, whose testimony tended to cure the deficiency in appellee's former proof by which he had sought to show title originating in the Commonwealth. The Chancellor must have regarded this additional proof as sufficient for the purpose, since he entered his final decree awarding the land to appellee without any further proof having been introduced showing adverse possession.

Admittedly, the boundary conveyed by R. C. Combs to Lacy Combs on January 4, 1888, included the one

hundred acres in controversy, and at least one surveyor testified that the one hundred acre tract was within the boundaries of the three hundred and twenty-two acre patent issued to Nicholas Combs on July 10, 1812. On April 13, 1824, Nicholas Combs conveyed to Jeremiah Combs one hundred and twenty-six acres, reciting that the land conveyed was part of the three hundred and twenty-two acre survey; on August 13, 1824, Nicholas Combs conveyed to Samuel Combs one hundred and twenty-six acres without referring to the source of title; on April 13, 1824, Jeremiah Combs conveyed to Samuel Combs ten acres without giving the source of title; and on June 10, 1845, Jeremiah and Samuel Combs conveyed to Robert Combs (Lacy Combs' grantor), but without referring to their source of title:

"a certain tract or parcel of land, lying and being in the County of Perry on the waters of the North Fork of the Ky. River & bounded as followeth, to-wit: Beginning at the mouth of Log Branch: thence up on both sides of said river, so as to include all of the salt works claims as specified in the article between Samuel Combs and Jeremiah Combs now in the Clerk's office, with its appurtenances."

As pointed out by the Chancellor in his opinion heretofore quoted, the evidence introduced was insufficent to show title by adverse possession in either claimant. As the record then stood, he was also of the opinion that the description in the deeds by which appellee attempted to trace his title to the Commonwealth, except the description in the deed from R. C. Combs to Lacy Combs, were too indefinite to enable the Court to say that they covered the land in controversy. The testimony of the two surveyors subsequently introduced strongly indicated that the description quoted from the deed from Jeremiah and Samuel Combs to R. C. Combs was intended to include, and, considered in the light of the surrounding circumstances, did include, the land in controversy. As before stated, there was testimony of a surveyor to the effect that the boundary in dispute was part of the three hundred and twenty-two acres patented to Nicholas Combs, and, as shown by the deeds heretofore referred to, Nicholas Combs conveyed one hundred and twenty-six acres of the patented lands to Jeremiah, and, almost certainly, a portion thereof to Samuel Combs. While the descriptions in the deeds

just referred to are vague and indefinite and are subject to many of the criticisms leveled at them by appellants' counsel, they, nevertheless, convey lands on the North Fork of the Kentucky River in the vicinity, at least, of the tract in controversy, and the deed from Jeremiah and Samuel Combs to R. C. Combs undoubtedly included it, if, as the testimony of the two surveyors last referred to clearly indicates, the salt works claims extended on the south bank of the river to the top of the ridge referred to in the deed from R. C. Combs to Lacy Combs. In any event, we would not be justified in disturbing the Chancellor's final decree, obviously based on that conclusion, in the absence of the maps prepared by one or more of the three surveyors who testified in support of appellee's claim and against that asserted by appellants. It is true that the one surveyor introduced as a witness by appellants testified that he did not think the map marked "Exhibit F" purporting to show the land in controversy and the three hundred and twenty-two acres patented to Nicholas Combs, was correct, but neither he nor any other witness for the appellants offered to file a corrected one. The maps referred to were introduced in evidence, and we are at a loss to account for their non-production. Appellee's counsel says in his brief that he has not seen the maps. Appellants' counsel refers to "a map filed in the record" as being "indefinite and uncertain", and states that it "does not shed any light upon the facts". Neither counsel represented his present client in the trial below. The Clerk's certificate shows that he copied the entire record "except the original maps filed with the depositions". The importance of these maps to a correct decision of the case may be inferred from the fact that the surveyors frequently referred to them while testifying. If they in fact supported their testimony, which we have no reason to doubt, it necessarily follows that they supported the Chancellor's ultimate conclusion.

Appellants' counsel also invokes the defense of champerty, Kentucky Statute, sec. 210, claiming that Jennie Combs' grantor was in adverse possession of the land at the time Lacy Combs received his deed from R. C. Combs. But we agree with the Chancellor's finding that aside from the cleared field containing about ten acres which Jennie Combs' husband and son had

fenced, and which was excepted from the final decree in appellee's favor, none of the land in controversy was shown to have been in the adverse possession of anyone.

Likewise unavailing is the argument that the appellee's action to quiet title must fail because he did not prove that he was in possession of the land. Frequently we have held that when a defendant in such an action, by counterclaim, asserts title in himself and seeks an adjudication upholding it, the requirement that possession be proved is waived. Crawley v. Mackey, 283 Ky. 717, 143 S. W. (2d) 171; Whitaker v. Shepherd, 280 Ky. 713, 134 S. W. (2d) 604.

Judgment affirmed.