# Martt v. McBrayer et al.

Nov. 6, 1942.

James C. Clay for appellant.

J. H. Powers for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellant, E. W. Martt, was the plaintiff below and the appellees, B. F. and Joe McBrayer were defendants. As Joe was only an employee of B. F. McBrayer and just a nominal party to this action, his name will be dropped and for convenience appellant will be referred to as plaintiff and appellee, B. F. McBrayer, as defendant.

Claiming to be the owner and in possession of a certain tract of 75 acres of land on the waters of Minor

Creek in Rowan County, plaintiff filed this action against defendant to quiet title and to recover $350 damages for the wrongful cutting of timber therefrom. Also, an injunction was sought against defendant restraining him from committing further trespasses. By answer and counterclaim defendant denied the trespass or that plaintiff had title or was in possession, and asserted title in himself, alleging that he and his predecessors in title had been in the adverse possession of the land since 1873, and asked that his title be quieted. A reply completed the issue.

This action was filed under KRS sec. 411.120, KS sec. 11, and as defendant denied plaintiff's title and possession and asserted title in himself and sought relief by way of counterclaim, the case stood for trial on its merits as to which of the parties had superior title, whether by deed or by adverse possession. Osborn v. Osborn, 204 Ky. 144, 263 S. W. 738; McGiboney v. Newman, 277 Ky. 835, 127 S. W. (2d) 860; Whitaker v. Shepherd, 280 Ky. 713, 134 S. W. (2d) 604. Each claimant introduced considerable proof as to his possession of the land as well as whether or not same was included in his paper title, and as is usual in such cases there was much conflict in the evidence. The chancellor's judgment was in favor of McBrayer and Martt appeals.

The land in dispute is some 10 or 15 acres of rough, wild, unfenced timber bounded by cliffs on the east and west, and by what plaintiff claims is the true line on the south, with a line claimed by defendant as its northern boundary. Minor Creek traverses this land. Plaintiff's 75 acre tract adjoins and lies just north of defendant's 20 acres. Hence, the solution of this controversy is the correct determination of the north-south boundary line between their two tracts.

A good bit of testimony was taken by each party in an effort to establish his adverse possession of this small tract. But the evidence adduced by neither was impressive or convincing, and as we interpret the record, neither has been in the adverse possession of this land during the last 15 years. This being true, it becomes a question of which has a superior paper title. Plaintiff traces his title back to a patent of 200 acres issued on Aug. 23, 1869, to Moses Rois and Jedediah Day (referred to in the record as Jed Day); while defendant carries his title back to a deed made to his father, Lewis P. (Park) McBrayer

by Levi W. Goodan and wife on May 29, 1873, conveying 402 acres. Plaintiff contends that as his paper title is the older and runs back to the Commonwealth, he must be adjudged title to this land. He is correct if his deed covers the land in controversy.

By will dated Sept. 25, 1901, Jed Day bequeathed to Sheridan Thomas (plaintiff's predecessor in title), "the following lands lying under the cliffs of *Miner* on either side of the creek in Rowan County, Kentucky, from Millstone Gap down to the mouth of *Sloane* branch."

In the deed from Sheridan Thomas to Sim Thornsberry of Aug. 3, 1908, the description reads:

"Beginning at the millstone gap; thence running straight across the creek to the cliff; thence down the creek with the cliffs to Park McBrayer's line; thence crossing the branch and with McBrayer's line to the cliff; thence with the meaders of the cliffs to the mouth of Sloan Branch and including all the land under the cliffs on the Sloan Branch; thence with the meanders of the cliffs back to the beginning corner, containing 100 acres being the same more or less."

Thornsberry conveyed this land to Robert Stegall in 1924 and Stegall conveyed it to S. M. Bradley in 1927. Plaintiff testified he obtained a deed from Bradley's trustee on Jan. 7, 1939, and we presume the description contained in plaintiff's deed was the same as that in Bradley's deed, but plaintiff's deed cannot be found in the record. The description in the conveyance to Bradley is the same as that in the deed to Thornsberry to where it calls for Park McBrayer's line, and from that point the description in the Bradley deed reads:

"thence with said McBrayer line to about fifty yards below the mouth of the branch leading from Jesse Jennings house or about fifty yards from the Robert Stegall house; thence leaving said cliff and crossing said Minor Creek by the way of a large rock about fifty yards below said house and near the Minor creek to the said cliff on the opposite side; thence with the meanders of said cliff up the creek to the beginning corner, and containing seventy-five acres more or less."

Plaintiff's proof does not locate the Park McBrayer line nor does it locate the mouth of the branch, which

we presume is Sloan Branch called for in the Jed Day will and the Sim Thornsberry deed. From plaintiff's proof and from the exhibits appearing in the record, we have been unable to determine that the description in his chain of title (his deed not being in the record) includes the land in controversy.

The description in defendant's deed reads:

"Beginning on a maple on the north side of hill under the cliffs; thence east down the hill to a rock in the branch; thence the same course to a chestnut under the cliff; thence north course with the meanders of cliff to the falls of a branch; thence a south course with the meanders of the cliff to the beginning corner, containing about 20 acres more or less."

J. A. Lewis, plaintiff's surveyor, testified that this description could not be run out on the ground as the four calls represented only two lines, contending that the third call "thence north course with the meanders of cliff to the falls of a branch" was retraced by the fourth and last call "thence a south course with the meanders of the cliff to the beginning corner." Mr. Lewis has put the wrong construction on this fourth call. The term "south course" as used in this deed does not mean due south, but in common parlance means a southwardly course. We think the same distinction should be made here between "south" and "south course" as was made in Craig v. Hawkins' Heirs, 1 Bibb 53, 4 Ky. 53, between "north" and "northwardly," where it was said that the latter term means "towards, or approaching towards the north, rather than towards any of the other cardinal points." It is an elementary rule that courses and distances give way to natural objects, and one must go from the last corner to the beginning corner regardless of courses and distances. Simpkins' Adm'rs v. Wells, 42 S. W. 348, 19 Ky. Law Rep. 881; Fordson Coal Co. v. Bowling, 238 Ky. 221, 37 S. W. (2d) 69.

Defendant's proof is more convincing that his deed includes the land in controversy than is plaintiff's proof that it was included in the latter's deed. Sim Thornsberry's three sons testified that when their father owned the land subsequently acquired by plaintiff, he claimed that the line from the chestnut straight across the hollow was the dividing line between the two tracts. Some 25 years ago when Burl Wilson and Ed McBrayer cut timber off the Bob Stegall tract (now owned by plaintiff)

for the Clearfield Lumber Company, they did not go south of the line from the cliff to the chestnut. The evidence for defendant was that the true line between his land and plaintiff's ran from a maple to a marked rock in the creek, thence to the chestnut. It is true that the maple was cut recently by defendant and some of plaintiff's witnesses state there were no marks on the log which was nearby and that the tree was not as old as claimed by defendant; also, that the rock which defendant claimed was in the line had no marks on it. The most that such conflicting testimony could do would be to leave our mind in doubt as to the correctness of the chancellor's finding, in which event we do not disturb his judgment. Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606; Martyn v. Jacoby's Adm'r, 223 Ky. 674, 4 S. W. (2d) 684.

The chancellor was correct in dismissing plaintiff's petition, since he did not prove adverse possession or prove that the land in controversy was covered by his title papers. Likewise, he was correct in not adjudging title in defendant as he did not trace his title back to the commonwealth or to a common source, or prove adverse possession, the three ways in which title may be proven in this jurisdiction. Ogle v. Cole's Ex'rs, 221 Ky. 726, 299 S. W. 566; Strunks Lane & Jellico Mountain C. & C. Co. v. Anderson, 276 Ky. 576, 124 S. W. (2d) 779.

Therefore, the judgment is affirmed.