## Hunt v. Cassity.

June 6, 1944.

W. C. Hamilton and Edward C. O'Rear for appellant.

G. C. Ewing for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, plaintiff below, filed his petition in equity against Joe Cassity, and by an amendment made Pinkard Alley defendant, alleging that they were cutting and removing timber on lands to which Hunt claimed title. Hunt alleged that he was the owner and in possession of the 45 acres, and that Cassity was claiming to be the owner, thus slandering his title. The petition sought recovery of damages to the extent of $130, and quieting of title.

Answer controverted, and alleged that Cassity was the owner of 405 acres of land lying in Bath and Menifee counties, which included the 45 acres in controversy. This answer was not made a counterclaim, but Cassity sought affirmative relief, and the answer is to be treated as a counterclaim. Bennett v. Parsons, 226 Ky. 782, 11 S. W. 2d 935; Crawley v. Mackey, 283 Ky. 717, 143 S. W. 2d 171.

It was the claim of Hunt that his father J. G. Hunt had bought at a sheriff's sale a tract of land of about 200 acres; the sheriff's deed described the tract by general boundaries, one being a boundary of the land formerly owned by J. M. Cassity, father of appellee. J. G. Hunt was the father of nine children; plaintiff did not present any deed for this land, other than a quitclaim from some of the Hunt heirs for their interest in the father's estate. Four of the heirs of J. G. Hunt by pleading disclaimed any interest in the 200 acre tract. It is recited in their pleading: "* * * J. G. Hunt died intestate, leaving surviving him" the four intervenors, and that he "left considerable real estate in Menifee County, which was by mutual consent of said children divided, thereby allotting to each child his and her respective share, and that portion described in the petition was

718

allotted to plaintiff, and he has at all times been in possession thereof,'' and they disclaim.

The chancellor found that plaintiff had by his proof shown that the land in controversy was considered as a part of the J. G. Hunt land, and the Hunts had at times removed timber therefrom, both for sale and household uses. The proof showed that the acreage was not susceptible of cultivation and had never been fenced. During the pendency of the suit a map was made, partially from the Cumberland Reservation survey in 1933 or 1934, and it appears from that survey the Government surveyor ran the line between the Hunt and Cassity properties, which Cassity claims to be the established line.

It was further shown by a half-brother of appellant that following J. G. Hunt's death there was a division of his land among the Hunt heirs. No deeds appear to have been made, nor were any filed, and no notes or memorandum presented on trial. This and another witness say that the 45 acres in controversy was not included in this division.

The chancellor found on the other hand that Cassity's proof established, as he had plead, that the land in controversy was a part of what was and is known as the John M. Cassity farm lying in the two counties. This was inherited by Cassity's wife from her father; that this land was in possession of Cassity's mother or grandfather at the time Menifee County was established. A deed was exhibited of date 1928, showing conveyances to the defendant Cassity (405 acres) executed by all of the other heirs-at-law of Mrs. Cassity. This deed shows that the land was in Bath County. This discrepancy is satisfactorily explained by showing that after the establishment of Menifee County the whole tract was listed in Bath County. The proof also showed that the tract was timbered by the Cassitys as part of their farm, and that some of the timber was cut and hauled through the Hunt farm. Also that upon one occasion the Hunts had undertaken to cut timber from the tract, but upon warning from Cassity there was no further cutting. The defendants also showed by a number of witnesses that the tract was always considered as a part of the Cassity acreage; that following the death of J. G. Hunt, and prior to the partition, approximately in 1910, Cassity had Reffitt to survey and map the J. M. Cassity farm,

and the map was on file. Reffitt had died in the meantime, but the map shows that the survey was made following natural objects and marked boundaries. One of the heirs of J. G. Hunt was present during part of the time when the survey was being made.

Cassity and his brother testified as to an agreed line established by J. G. Hunt and Cassity about a year before the survey was made, the same line claimed by defendants, but the chancellor held this testimony incompetent and in his memorandum says it was not considered. Following the narration of facts, as found by the chancellor, he concluded that both parties had claimed the land, and at times had removed timber. The chancellor it appears based his conclusion that appellant had failed to establish title on the grounds of adverse possession, that the occasional cutting of timber was not sufficient to establish title in this manner. Davidson v. Young, 253 Ky. 345, 69 S. W. 2d 721. The deed to J. G. Hunt called for a boundary line coincident with the Cassity line, therefore his color of title only extended to that line, wherever it was.

The chancellor reiterated the proof with relation to the Reffitt map, and the fact that witnesses for appellant had, without dispute, said that the tract in controversy was not included in the inter-parties division, a fact which the chancellor says was known to plaintiff. The court said that a probable deduction was that Reffitt found that the tract was a part of the Cassity farm, and that the heirs of J. G. Hunt had acquiesced in the conclusion. It was emphasized that the Cassity tract had been in possession of the Cassitys for a long period of time, certainly prior to the formation of Menifee County in 1869. There could hardly be a reasonable conclusion that the line between the counties established a boundary formerly established between the two tracts of land.

The court further said that the pine tree No. 54, on the Reffitt map, was fairly shown by proof to be a true corner of the Cassity tract. This tree is on the waters of Buck Creek on the Menifee side. This was considered important because the plaintiff is contending that the Cassity tract only extended to the Menifee line. It is probable that the location of the county line initiated the controversy, but it is fairly shown that the Cassity farm was in existence and occupied by them before the establishment of the county line.

The chancellor concluded that neither party had paper title, and that possession of the plaintiff, and those under whom he claimed, was not satisfactorily shown. The evidence of possession by appellee, and those under whom he claimed, is fairly well shown, and corroborated to considerable extent by the Reffitt map and survey, and the undenied testimony of witnesses for appellant. The chancellor concluded that the proof showed that Cassity had superior title and judgment was entered accordingly, dismissing appellant's petition.

It seems to be agreed in briefs that there was no effort to trace title to either tract of land back to the Commonwealth, or in either case to trace to any appreciable extent. The plaintiff, as pointed out by the court, gave only a general description in his petition, and filed a deed from the sheriff of Menifee County, dated in October 1875, to J. G. Hunt, which was made in a suit between one Greenwade and J. L. Williams, administrator of J. G. Williams, deceased. This deed contains no description other than the general one "substantially" as set out in the petition, showing the 200 acre tract to be bounded on one side by the lands of J. M. Cassity; appellee's only showing of paper title was his deed from the heirs of Mary J. Cassity. The deed described a tract and said to contain 405 acres, and was made in 1928. The description is by particular metes and bounds, and it is established that Mrs. Cassity inherited the tract from her father, and that she had been in possession for thirty or more years. Thirty-five years before the controversy Joe Cassity bought the tract from his mother and father, but neglected to take conveyance. He lived on the place from that time, and the other Cassity heirs made him a deed.

It is agreed by appellant that such title as either party claims is possessory. There is no evidence of appellant's title back of the sheriff's deed, nor was there any showing of description of the land conveyed by reference to the Greenwade-Williams suit, and it is conceded that the sheriff's deed could convey only such title as was in Williams when the Greenwade suit was filed. This deed may have given such color of title as would authorize a suit to remove a cloud.

A considerable part of appellant's brief is devoted to an analysis of the evidence in an endeavor to demonstrate that Cassity failed to show either a paper title, or

title by adverse possession, or title by reason of the claimed division line agreed upon by him and J. G. Hunt. This argument is advanced to show that the court was in error in adjudging to Cassity a superior title. It is thoroughly established in this jurisdiction that the burden is on the one asserting title to prove both title and possession, and must succeed upon the strength of his title; not upon the weakness of his adversary's title. A reading of the record discloses that there was no paper title shown further than the sheriff's deed to Hunt's ancestor, which, as far as we can see, cannot be held to have included any portion of the Cassity tract, but which makes one of the boundaries of the Hunt tract a dividing line between the Hunt and Cassity tracts. The principle above mentioned is so well settled as to necessitate reference to only a few cases. Varney v. Orinaco Mining Co., 201 Ky. 571, 257 S. W. 1016; Crawford v. Baker, 283 Ky. 800, 143 S. W. 2d 512; Whitaker v. Shepherd, 280 Ky. 713, 134 S. W. 2d 604.

Here there was no showing by either party of title going back to the Commonwealth, or to a common source. As we read the memorandum opinion of the chancellor we do not construe it to hold or to mean that his judgment turned on the question of adverse possession. He found some evidence which would tend to show that there had been acts by both parties to indicate an adverse holding, and in this respect we think that he was justified in a conclusion that Cassity had made the better showing, sufficient to turn the scale in his favor. If we were in doubt on this point we would lend the chancellor's conclusion the controlling weight. His conclusion that plaintiff failed to show that the tract in dispute was never included in the sheriff's deed is well enough borne out by the proof. The proof to which the memorandum directed attention or rather emphasized was sufficient to justify his judgment that appellant's title was not superior to that of appellee. The chancellor had authority to adjudge appellee's title superior. In an action to quiet title where the defendant asserts title by counterclaim, or asks affirmative relief, the courts will pass on the question of superiority of title, notwithstanding the adversary fails to show title or possession. Justice v. Staton, 291 Ky. 179, 163 S. W. 2d 471.

Here it appears that both parties were in actual possession of their respective adjoining farms, and

claimed title to this uninclosed 45 acres of land, and as the chancellor found to be of little value, not actually occupied by either. Under such circumstances the unoccupied land attaches to the land showing the better title. Kentucky Land & Immigration Co. v. Crabtree, 113 Ky. 922, 70 S. W. 31, and recent case of Calhoun v. Gayhart, 280 Ky. 170, 132 S..W. 2d 760. We are of the opinion that the chancellor, after a careful consideration of the case, as is evidenced by his memorandum, reached a correct conclusion. If we entertain no more than a doubt we are required to affirm.

Judgment affirmed.