J. B. GATLIFF, Sr., et al., Appellants,

v.

E. F. WHITE, Appellee.

Court of Appeals of Kentucky.

March 1, 1968.

T. E. Mahan, Williamsburg, for appellants.

W. M. Cox, Jr., Williamsburg, for appellee.

PALMORE, Judge.

The heirs of Mrs. Florida E. Gatliff brought this suit against E. F. White (who died during the pendency of the action) for allegedly cutting and removing timber from their property in Whitley County. It is basically a boundary dispute. The trial court made findings of fact and reached conclusions of law favorable to the defendant, and the Gatliffs appeal from the resulting judgment. A review of the evidence convinces us that the chancellor's finding with respect to the correct location of the boundary is clearly erroneous and must be set aside.

White acquired his title from the heirs of Clell Veach. In 1921 a similar action (wrongful cutting and removal of timber) brought by Mrs. Gatliff against Clell Veach ended in an agreed judgment establishing the Gatliff boundaries as follows (we have numbered the calls and italicized certain portions of the description for the purpose of easy reference in the course of the opinion) :

Beginning on a white oak and two beeches standing in Pack's Branch, *a corner of a survey made in the name of Amos Veach;*

1. thence with the line of said survey on the reverse call N 74½ W 9½ poles to a stake on a line of the Isaac Anderson survey;

2. and with said survey N 21 E 26 poles to a white oak,

3. N 48 E 36 poles to a white oak,

4. S 53 E 22 poles to a maple,

5. S 65 E 16 poles to a gum,

6. N 12 poles to a stake *in the Riley Hamblin survey;*

7. and *with said survey* on the reverse S 77 E 27 poles to two chestnuts;

8. thence S 8 W 60 poles to a maple and two chestnuts in the Pack Gap;

9. S 34 W 5 poles to a black gum, a corner of the John Veach deed:

10. thence with a conditional line between G. M. Veach and General Powers S 79 W 7 poles to a chestnut oak;

11. thence S 15 W 8 poles to a gum;

12. thence S 41 W 12 poles to a chestnut oak;

13. thence S 80 W 9 poles to two sourwoods and chestnuts *in a line of Amos Veach survey;*

14. and *with same on the reverse* N 7½ W 36 poles to the beginning,

containing 28½ acres, more or less.

It is conceded that this 1921 judgment is binding on all parties and must prevail. However, the description will not close, and the surveyors employed by the respective parties in the present lawsuit differ as to where the mistake was. The Gatliff surveyors say it was in the last call (No. 14), which, in order to conform to the Amos Veach survey, must run N 49 W 66 poles rather than N 7½ W 36 poles. The White surveyors contend it was in call No. 8, which they change from S 8 W to S 48 W 60 poles, but in so doing get a line that actually measures 68 poles instead of 60 poles and does not fit with the Riley Hamblin patent. They also find the oak and beeches, which are given as the beginning point in the 1921 judgment, at a place that is not and cannot be a corner of the Amos Veach patent; this follows from the fact that the call for N 7½ W 36 poles (No. 14) does not run with any line of the Amos Veach patent.

■ A fact-finder's choice between conflicting opinions of expert witnesses rarely can be held "clearly erroneous." Nevertheless, if an expert opinion is based upon erroneous facts or assumptions, or fails to take into account indispensable factors that are otherwise established, it lacks probative value. In this case the Gatliff surveyors filed copies of the adjacent patents called

for in the 1921 judgment, established the beginning point at a corner of the Amos Veach patent, surveyed the lines from that point, platted in the bordering patent lines, and found everything in place except for the last call (No. 14). They figured this call to be erroneous for at least two reasons. First, though it (a) started at a point in the Amos Veach line, and (b) was to run "with the same on the reverse," and (c) ended at the beginning point, which also is a corner of the Amos Veach survey, the course N 7½ W did not follow the Amos Veach boundary (and, in fact, it would not intersect any line of the Veach survey even if extended) and, secondly, the distance of 36 poles would not reach the beginning point. They therefore conformed this line to the Amos Veach survey so as to run "with same on the reverse * * * to the beginning," making it N 49 W 66 poles. In the absence of something to show that the error is elsewhere, this is the orthodox procedure. Cf. Martt v. McBrayer, 292 Ky. 479, 166 S.W. 2d 823, 825 (1942); Watlington v. Kasey, 293 Ky. 382, 168 S.W.2d 988, 990 (1943).

Otherwise, the survey and plat executed by the Gatliff surveyors deviates from the 1921 judgment in only two insubstantial details. On call No. 7 it runs S 77 E 27 poles instead of S 80 E 27 poles, conforming to the Riley Hamblin survey, which calls for a course of N 80 W; and on call No. 8 it runs S 8 W 60 poles instead of S 7 W 60 poles, again conforming to the Riley Hamblin survey, which calls for a course of "N 7 E with said ridge 60 poles to two chestnuts."

The White surveyors obtained a different result by starting from Pack's Gap with call No. 9 and then adjusting call No. 8 to close (except, as above mentioned, the distance of 60 poles comes up short). They treated the course and distance given in the last call (No. 14) of the 1921 judgment as correct. This can be done, of course, only by eliminating the reference to "with same on the reverse" and only by disregarding the fact that the oak and two beeches to which this line runs are supposed (by the 1921 judgment) to be at a corner of the Amos Veach survey.

There can be no doubt, and indeed it is not disputed, that Pack's Gap (a natural cut or gap in the ridge) is the one most indestructible and readily identifiable landmark mentioned in the 1921 judgment, and that is the reason the White surveyors chose it as their starting point. It must be recognized, however, that the Gatliff surveyors, beginning at a point which they establish as being the same as the beginning point called for in the 1921 judgment, also hit Pack's Gap on the nose. The essential difference between the two approaches, which difference we regard as vital, is that the Gatliff surveyors conformed their survey to the adjoining patents (as the 1921 judgment requires), whereas the White surveyors expressly and steadfastly chose to disregard them. Their explanation was that the 1921 judgment controls, patents or no patents. That, however, is only half right. The judgment controls, but the judgment is anchored to the patents as well as Pack's Gap, and it cannot be construed without both.

The importance of the adjacent patents in arriving at the correct boundaries of the Gatliff property arises from the nature of the Alfred L. Clapp patent, from which the Gatliff title devolves. This patent, issued in 1874, was a blanket or "wildcat" patent, covering everything not already owned by someone else in a territory of 48,040 acres. Hence the property to which it passed title from the Commonwealth must be identified by a process of elimination. In other words, it is necessarily described in terms of and by reference to the conflicting boundaries of superior titles. Yet the testimony of Warman and Wright, the surveyors introduced for White, is replete with such exchanges as the following:

WARMAN:

Q— "Why did you not run all the calls of the judgment?"

A— "It didn't concern us. I realized that it all hinged around Pack's Gap, a corner

that couldn't be denied. The old residenters pointed that out as a landmark."

\*    \*    \*    \*    \*    \*

Q— "Why didn't you run that line?" [*That is, a line of the Riley Hamblin patent running from "a maple and chestnut on top of a ridge * * * N 7 E with said ridge 60 poles to two chestnuts," which are the same two chestnuts mentioned in call No. 7 of the 1921 judgment.*]

A— "Because it doesn't correspond to the judgment. I didn't run that line because it doesn't say that on the judgment." [*Note, however, that the judgment does identify the two chestnuts as being in the Hamblin line, and then follows with call No. 8 running "S 8 W 60 poles to a maple and two chestnuts in Pack Gap," which obviously is the same line mentioned in the Hamblin patent.*]

\*    \*    \*    \*    \*    \*

Q— "Do you not admit that this line from 8 to 9 [*call No. 8*] on the degree that you ran it from Pack's Gap followed the top of the ridge?"

A— "No, we went across a hollow and then across the ridge."

Q— "Then you didn't follow the ridge as directed by the judgment?"

A— "I don't think the judgment said anything about the top of the ridge. [*True, it did not in so many words, but call No. 8 actually coincides with the same line of the Hamblin patent, which does call for the ridge.*] As far as I'm concerned the judgment supersedes all deeds and all patents and all future claims. I went in there with that in my mind and so far as I'm concerned that patent is out and gone and I think the patents are no count as far as that judgment is concerned."

\*    \*    \*    \*    \*    \*

Q— "Now, did you do any surveying, or did you just take what the told-timers told you?"

A— "I surveyed two or three lines in each one of them. I wasn't interested in the patents. I didn't believe they were any good."

\*    \*    \*    \*    \*    \*

Q— "You admit you don't know where the Veach line is?"

A— "I think I do. I think I've done enough work to know where they're all at. I know where nine of them patents is . . So, far as that's concerned, I'm just relying on the judgment because I think it supersedes all other surveys and patents. The judgment's it so far as I'm concerned."

Q— "You haven't run any one of these surveys, not a single one."

A— "Not all out, no sir, but I know where the judgment is and that's all I'm concerned about is the judgment."

\*    \*    \*    \*    \*    \*

Q— "And you agree that this patent [*Hamblin*] calls for the top of the ridge?"

A— "Yes, but I'm not interested in the patent."

Q— "And you admit that the call in the judgment is, outside the variance of one degree, is the same call of South 8 W 60 poles as in the patent?"

A— "They may be in degrees."

Q— "Degrees and distances?"

A— "Oh, yes."

\*    \*    \*    \*    \*    \*

Q— "What if you had started at Pack's Gap and reversed your calls? Which line would you have had to change to close then?"

A— "*Then I would have had to change one on the south.*" [Emphasis added.]

\*    \*    \*    \*    \*    \*

Q— "Even though the judgment specifically called to and with the Riley Hamblin survey and the Amos Veach survey and the Isaac Anderson survey and the John Sears survey, you threw them all away?"

A—"Yes, I think the judgment holds over all other judgments, patents and deeds."

\* \* \* \* \* \*

Q— "Doesn't it say after the call South 80 West 9 poles to two sourwoods and a chestnut, in the line of the Amos Veach survey, and with the same on the reverse, North 7½ W?"

A— "I never found the Amos Veach patent."

Q— "You never saw the Amos Veach patent?"

A— "No, but I can run a deed as good as you can or anyone else."

WRIGHT:

Q— "All right, you knew that the judgment called for the beginning at a white oak and beech standing in Packs Branch, the corner of a survey made in the name of Amos Veach. Did you undertake to locate the line that is called for in the survey indicated in the Amos Veach patent?"

A— "No, I didn't know anything about the patent. The judgment is the only thing I was relying on."

\* \* \* \* \* \*

Q— "Well, you say you didn't locate the Veach patent, so you don't know where that is. And you didn't locate the Isaac Anderson patent."

A— "That's beyond the judgment and the judgment is what I was relying on."

\* \* \* \* \* \*

Q— "Then you don't know that you started in the Amos Veach survey as called for, or that you went to the Isaac Anderson survey as called for, do you?"

A— "I didn't go into that part of it."

Q— "You don't know if you got back to the Riley Hamblin patent, do you?"

A— "No."

Q— "And you don't know that when you came back here in the south end that you again intersected with the Veach patent? And you don't even know that you got back to the Veach patent line when you extended that line to Packs Gap, do you?"

A— "I followed the metes and bounds of the judgment. I haven't gone into detail about it."

\* \* \* \* \* \*

Q— "If you followed the judgment, you wouldn't get back to Packs Gap at all, the way you surveyed it. When you changed that line from 8 to 9, if you had followed up that line you never would have got back to Packs Gap and you would never get back to the beginning corner if you stayed with the judgment, would you?"

A— "That's right."

Q— "And you would have missed that 40 degrees and 10 poles, wouldn't you?"

A— "Yes."

\* \* \* \* \* \*

Q— "You don't know if this watershed is on Mulberry Creek or not?"

A— "No, I wasn't up there."

\* \* \* \* \* \*

Q— "And even though this calls for a ridge, you threw that away?"

A— "I don't know anything about the lay of the ground."

Q— "Assume that there is a ridge between 8 and 9, would you have felt justified in changing that course and distance 40 degrees and 10 poles to get back to the beginning?"

A— "If it said follow the ridge, no."

Q— "You didn't know what the call was of the Veach line that you were supposed to be following?"

Q— " No, I don't know anything about the Veach line."

Q— "If you had known that it was north 74½ W 9½, that isn't what you ran, is it?"

A— "No, I didn't run that line."

\* \* \* \* \* \*

Q— "If you stayed on the Veach line?"

A— "I don't go along with the patent call."

Q— "The judgment is what calls for the Veach line specifically."

A— "I don't know but what the Veach line run like that. I don't know anything about the patent."

Q— "You wouldn't argue with an engineer who has established this patent and marked it on this map, would you?"

A—"No, I didn't go into the patent."

It is crystal clear from the evidence of Warman and Wright that they chose call No. 8 as the one that was in error, and thus to be corrected, simply because, with Pack's Gap as their starting point, it became the last call, even though this result threw the entire description out of kilter with the adjoining patents mentioned in the 1921 judgment. On the other hand, in choosing the last call of the 1921 judgment as the one to be corrected the Gatliff surveyors had a logical basis in the fact that it called for the line of the Veach survey. Moreover, call No. 8, their easterly boundary, matches the Hamblin survey, which runs along the ridge, a natural dividing line, the same ridge on which they find Pack's Gap, whereas Warman and Wright admit that their survey runs to a point east and beyond the ridge, in the Mulberry Creek watershed, so that the line from that point back to Pack's Gap does not follow the crest of a ridge, but "goes up the side of a ridge, sort of a saddle," or "across a hollow and then across the ridge."

The White witnesses produced photographs of a beech and fallen white oak in the vicinity of where call No. 14 would end near the head of Pack's Branch if it is run N 7½ W 36 poles from the point described in the 1921 judgment as two sourwoods and chestnuts in a line of the Amos Veach survey. The beech shows signs of hack marks. John Veach, a son of Clell Veach, said he participated in establishing this point at the time of the 1921 judgment, not long after he had come back from the army, that the hack marks had existed since he was a boy, and that he had known of this corner for about 50 years. However, his testimony is clouded by the fact that when this controversy arose, and at the time he testified, he was physically unable to go on the ground and identify it and had not been there for at least four years. Moreover, he admitted that he had not followed the other lines called for in the judgment and did not know where they were. For several reasons, this beech and fallen oak could not have been the same ones mentioned in the judgment, because they are not in the line of the Amos Veach patent. Moreover, the Veach survey was made in 1845, and trees that were large enough at that time to be marked as a corner would now be giants or else down and gone. The inference most favorable to the White claim would be that the hack marks were made in 1921, but John Veach says in effect that they were there *prior to* the 1921 settlement,[1] and in the absence of an explanation as to why they are not in the Amos Veach line, as called for by the 1921 judgment, and why the rest of the description does not fit with the patent lines referred to in the judgment, this evidence simply does not have enough probative value to support the position taken by the White surveyors against the overwhelming logic of the case presented by the Gatliff surveyors.

One other detail bears mention. Appellee contends that the Gatliff surveyors admit their boundary contains 44 acres, whereas the 1921 judgment calls for 28½ acres. In both their exhibits and testimony the Gatliff surveyors estimate the area as 33.75 acres. The record is silent as to how the acreage was ascertained in 1921. Un-

1. " * * * I know where the corner was and where it was run from when I was a boy 16 or so * * *. Gatliff contra- dicted it, but it was a corner we could indicate." When John Veach gave his testimony in 1962 he was 65 years old.

der the circumstances we cannot ascribe much significance to this discrepancy in estimated acreage.

It is our opinion that the evidence produced by the Gatliffs was so clear and convincing as to require a judgment in their favor unless refuted by substantial evidence to the contrary, and that the evidence to the contrary was not sufficient to deny it.

The cause is reversed and remanded with directions that a judgment be entered awarding appellants the amount of their damages.

All concur.